Hart, J.
 

 The contention of the plaintiff is that the trial court in submitting the case to the jury erred in its charge relating to nuisance. The defendant claims, however, that since another issue was made by it to the effect that plaintiff’s injury was due to the sole negligence of the driver of the car in which plaintiff was riding at the time she was injured, and that since the court charged correctly on this issue, error in the charge on the issue of nuisance, even if conceded, did not warrant a reversal of the judgment, because of the two-issue rule as announced in the case of
 
 Sites
 
 v.
 
 Haverstick,
 
 23 Ohio St., 626.
 

 Does the claim, that sole negligence on the part of a third person was the proximate cause of plaintiff’s
 
 *430
 
 injury, call for the application of the two-issue rule? This court is of the opinion that it does not do so. A claim on the part of a defendant that plaintiff’s injuries were proximately caused by the negligent acts of a person other than the defendant is but another form of a general denial. It does not create a separate issue and does not furnish any basis for the application of the two-issue rule.
 
 Montanari
 
 v.
 
 Haworth,
 
 108 Ohio St., 8, 140 N. E., 319;
 
 H. E. Culbertson Co.
 
 v.
 
 Warden,
 
 123 Ohio St., 297, 175 N. E., 205;
 
 Gottesman, Admr.,
 
 v.
 
 City of Cleveland,
 
 142 Ohio St., 410, 414, 52 N. E. (2d), 644;
 
 Augusta
 
 v.
 
 Paradis,
 
 61 Ohio App., 323, 325, 22 N. E. (2d), 578; 2 Kinkead on Code Pleading (2 Ed.), 1040, Section 932.
 

 The main question to be determined in this case arises from the trial court’s giving a special charge bearing upon the liability of the defendant. The Court of Appeals reversed the judgment, because of such •instruction, on the ground that it was erroneous and prejudicial to the plaintiff. At the request of the defendant, the trial court charged the jury before argument as follows:
 

 “It does not follow because the plaintiff was injured that the city of Cincinnati is liable to her in damages therefor. The injury alone will not be sufficient to support a cause of action.
 

 “The city of Cincinnati is not an insurer of the safety of its streets or roads, nor of the lives and limbs of persons passing over and along the same; nor is the city required, in the improvement and care of its streets, to do everything that human ingenuity and knowledge can devise to prevent the happening of accidents, or injuries to persons using the streets or roads.
 

 “The city is bound only to exercise ordinary care to see that its roads are reasonably safe for use and travel in the usual mode and the law does not exact
 
 *431
 
 of the city that which is unreasonable or impracticable. ”
 

 The Court of Appeals, in reversing the judgment, in its opinion said:
 

 “This special charge is in direct conflict with the general tenor of the general charge, and is erroneous. It required the plaintiff to prove not only a nuisance, but also negligence in creating or maintaining it. That is not the law.”
 

 The important question before this court is whether the defendant, in permitting the tree in question to remain on the margin of the highway, became liable for maintaining an absolute nuisance without regard to care or lack of care exercised in the premises. Preliminary to a concrete answer, it will be profitable to to consider the broader question: When, if at all, is negligence a factor in liability for nuisance?
 

 The original concept of justice, as established in the early English law, required anyone who caused harm to another to make good the loss regardless of any fault or intent to injure on the part of the actor. 2 Holdsworth’s History of English Law, 51; 3 Holds-worth’s History of English Law, 375
 
 et seq.,
 
 8 Holds-worth’s History of English Law, 446
 
 et seq.;
 
 Wigmore, “Responsibility for Tortious Acts: Its History,” 7 Harvard Law Review, 315, 383, 441.
 

 But as civilization advanced, the law advanced with it by adopting the modern view that it is unjust to require a person to pay losses resulting from harm caused innocently or accidentally without fault. And in the modern law of torts it is now firmly established that fault on the part of the actor is the basis of liability
 
 (Kress
 
 v.
 
 Lane Bros.,
 
 187 Iowa, 518, 171 N. W., 571, 5 A. L. R., 1376), except in a limited class of cases to which reference will be made.
 

 Nuisance is a form of tort but it is not restricted to a single type of tortious conduct. “Nuisance” is a
 
 *432
 
 term used, to designate the wrongful invasion of a legal right or interest. It comprehends not only the wrongful invasion of the use and enjoyment of property, but also the wrongful invasion of personal legal rights and privileges generally. However, such right or interest may be invaded by any one of several types of wrongful conduct, and the liability of a defendant, in any case, depends upon the type of his ■wrongful conduct with respect to the right or interest invaded. “The tort of * * * nuisance includes intentional harms, and harms caused by negligent, reckless or ultrahazardous conduct.” 4 Restatement of Torts, 220.
 

 To properly consider and determine tortious liability in accordance'with legal principles, it is necessary to differentiate and classify the several types of tortious conduct. In general, they may be designated as follows: (1) Culpable and intentional.acts resulting in harm; (2) acts involving culpable and unlawful conduct causing unintentional harm; (3) nonculpable acts or conduct resulting in accidental harm for which, because of the hazards involved, the law imposes strict or absolute liability notwithstanding the absence of fault; and (4) culpable acts of inadvertence involving unreasonable risks of harm.
 

 Strict or absolute liability is always applied where one does anything, or permits anything under his control or direction, to be done, without just cause or excuse, the necessary consequence of which interferes with or annoys another in the enjoyment of his legal rights. In such case the actor commits an intentional act involving a culpable wrong. Where the harm and resulting damage aré the necessary consequences of just what' the defendant is doing, or is incident to the activity itself or the manner in which it is conducted, the law of negligence has no application and the rule of absolute liability'applies. 4 Restatement of Torts,
 
 *433
 
 405. See, also,
 
 Aikens
 
 v.
 
 Wisconsin,
 
 195 U. S., 194, 49 L. Ed., 154, 25 S. Ct., 3;
 
 Bohan
 
 v.
 
 Port Jervis Gas Light Co.,
 
 122 N. Y., 18, 25 N. E., 246, 9 L. R. A., 711 (creating noxious odors which escape to adjoining premises). This court applied the rule in the cases of
 
 City of Mansfield
 
 v.
 
 Balliett,
 
 65 Ohio St., 451, 63 N. E., 86, 58 L. R. A., 628 (pollution of stream by casting sewage therein) and
 
 City of Barberton
 
 v.
 
 Miksch,
 
 128 Ohio St., 169, 190 N. E., 387 (continual and permanent flow of water upon lands of another by percolation from a public reservoir).
 

 There are also certain general types of conduct which, considered from a moral and social standpoint, involve culpable and unlawful acts and impose upon the actor strict or absolute liability for resulting harms without regard to the care exercised to prevent them. These types of conduct fall within the classification of culpable and unlawful acts causing unintentional harm. Where conduct involves the violation of law resulting in a civil wrong or harm, strict or absolute liability is applied. 8 Holdsworth’s History of English Law, 449 and 457; Pollock on Torts (12 Ed.), 20, Chapter II.
 

 The violation of a safety statute, enjoining a specific legal requirement for the protection of others, creates absolute liability or is negligence as a matter of law. This is on the theory that a violation of a specific lawful requirement which fixes a legal standard of duty, creates liability and the degree of care exercised is not in issue.
 
 Schell
 
 v.
 
 DuBois, Admr.,
 
 94 Ohio St., 93, 113 N. E., 664, L. R. A., 1917A, 710;
 
 Swoboda v. Brown,
 
 129 Ohio St., 512, 196 N. E., 274. See, also,
 
 Portage Markets Co.
 
 v.
 
 George,
 
 111 Ohio St., 775, 146 N. E., 283;
 
 The Great Atlantic & Pacific Tea Co.
 
 v.
 
 Hughes,
 
 131 Ohio St., 501, 3 N. E. (2d), 415;
 
 Rubbo
 
 v.
 
 The Hughes Provision Co.,
 
 138 Ohio St., 178, 34 N. E. (2d), 202.
 

 
 *434
 
 Furthermore, if harm is caused to another by reason of any unlawful act on the part of the defendant, the latter is liable without reference to the care exercised in the commission of such act. A person who does an act unlawful
 
 per se
 
 becomes, in respect to it, an insurer and is liable for loss resulting from harm which may happen in consequence of it to persons exercising ordinary care, irrespective'of the degree of skill and diligence exercised by himself, his agents or servants to prevent such injury.
 
 Gas Fuel Co.
 
 v.
 
 Andrews,
 
 50 Ohio St., 695, 35 N. E., 1059, 29 L. R. A., 337 (gas explosion, statute creating liability for failure to control gas);
 
 Higginbotham
 
 v.
 
 Kearsc,
 
 111 W. Va., 264, 161 S. E., 37, 77 A. L. R., 1110 (outward-swinging screen door opening over sidewalk, injuring pedestrian). This rule applies especially to the creation or maintenance of a public nuisance by a private person, which always involves an unlawful act.
 

 For instance, a private individual has no right to interfere with a highway or street without first obtaining permission from the proper authority, and to do so without such permission constitutes an absolute wrong and renders the wrongdoer liable as an insurer. It matters not whether he is prudent or careful, as he is bound to keep the highway safe at his peril.
 

 The third type of conduct deals with certain harms for the creation or commission of which, even without fault, the law imposes liability. These acts furnish exceptions to the general rule that liability is based upon fault. This classification comprehends acts from which there is no primary duty or obligation to abstain, but for which, if one does them and harm ensues, he will be liable to make compensation. The law considers not that the act is so dangerous as to be negligent or wrongful, but that it is so dangerous as to be allowable only on the terms of insuring the public against them. Bohlen, Studies in the Law of
 
 *435
 
 Torts, 416. It is said that the doctrine, that in certain exceptional cases a man acts at his peril, is a survival of the time when all a man’s acts were done at his peril. Justice Holmes says: “The possibility of a great danger has the same effect as the probability of a less one, and the law throws the risk of the venture on the person who introduces the peril into the community.” Holmes on the Common Law, 154.
 

 A person who, for his own purposes, brings on his lands and keeps there anything likely to do mischief, if it escapes, must keep it at his peril; and if he does not coniine it he is
 
 prima facie
 
 answerable for all the damage which is the natural consequence of its escape. Street, in his Foundations of Legal Liability, Volume 1, Chapter 5, designates such acts as “agents of harm,” and says that these are cases where one may be held liable for harm not directly done by himself, but by some creature of his for which he is answerable. This is the doctrine of the early case of
 
 Rylands
 
 v.
 
 Fletcher
 
 (1868), L. R. 3 H. L., 330, 37 L. J. Ex., 161, 19 L. T. Rep., 220, 33 J. P., 70, which, with modifications, has been adopted as the common-law rule in many jurisdictions of this country. The rule in question, which is being gradually narrowed in scope, has been considered and, in proper cases, applied to situations involving the maintenance of artificial reservoirs for the collection of water as distinguished from mill dams across flowing streams; the storing or use of dangerous combustibles, such as dynamite, nitroglycerin, gun powder, etc.; blasting operations on one’s own land adjacent to the premises of another; and trespasses due to the escape of wild animals, as distinguished from domestic animals.
 

 This rule was recognized and applied by this court to the handling of explosives, in
 
 Bradford Glycerine Co.
 
 v.
 
 St. Marys Woolen Mfg. Co.,
 
 60 Ohio St., 560, 54 N. E., 528, 71 Am. St. Rep., 740, 45 L. R. A., 658; to
 
 *436
 
 the explosion of an unguarded, unexploded bomb in a public park, in
 
 City of Cleveland v. Ferrando, a Minor,
 
 114 Ohio St., 207, 150 N. E , 747; to blasting operations, in
 
 City of Tiffin
 
 v.
 
 McCormack,
 
 34 Ohio St., 638, 32 Am. Rep., 408, and in
 
 Louden
 
 v.
 
 City of Cincinnati,
 
 90 Ohio St., 144, 106 N. E., 970, L. R. A., 1915 E, 356, Ann. Cas. 1916C, 1171. See, also,
 
 Id arris, Admx.,
 
 v.
 
 City of Findlay,
 
 59 Ohio App., 375, 18 N. E. (2d), 413.
 

 The fourth type of conduct above referred to comprehends culpable acts of inadvertence involving unreasonable risk of harm. They involve activities in most of which there is no great risk of harm so tong-as due care is exercised. This covers the field of negligence in which liability is based on the failure to exercise due care.
 

 Confusion exists in statements of the legal basis of liability as applied to the law of nuisance because the term “nuisance” has been used indiscriminately to designate the harmful result, without reference to the distinction between what has been called absolute nuisance or nuisance
 
 per se,
 
 importing- strict liability under legal principles above stated comprehending harms falling within types one, two and three, and other harms
 
 in the nature of nuisance,
 
 liability as to which is dependent upon negligence as described under type four.
 

 Nuisance has been defined as a distinct civil wrong, consisting of anything wrongfully done or permitted which interferes with or annoys another in the enjoyment of his legal rights. 3 Cooley on Torts (4 Ed.), 85, Section 398. This definition is broad enough to cover both types of nuisances above referred to. But the fact is, the term “nuisance,” in its strict and original meaning, was confined to cases which call for the application of absolute or strict liability.
 

 Often there appear, quoted in court opinions, law text books and law encyclopedias, statements concern
 
 *437
 
 ing the law of nuisance from which it might be inferred and indeed sometimes is inferred that negligence is, in no event, a factor or element in the law of nuisance. But an examination of the court opinions from which these statements or legal principles are taken and the cases cited in support of them, will disclose that they relate to and state the basis of liability in actions to abate nuisances or in actions for damages in cases of absolute nuisances involving harms arising from intentional trespasses, from unlawful conduct or from extra hazardous operations as defined under the doctrine of
 
 Bylands
 
 v.
 
 Fletcher, supra,
 
 all constituting an interference with another in the enjoyment of his legal rights, for which conduct resulting in damage the law exacts absolute or strict liability.
 

 To demonstrate the truth of this observation we shall quote some of these statements above referred to, and follow each separate statement with a notation of the character or type of cases cited in support of each.
 

 “As a general rule, liability for nuisance does not depend upon the question of negligence and may exist although there was no negligence.” Citing
 
 Laflin & Band Powder Co.
 
 v.
 
 Tearney,
 
 131 Ill., 322, 23 N. E., 389, 19 Am. St. Rep., 34, 7 L. R. A., 262 (explosion of a powder magazine maintained within a city in violation of a city ordinance);
 
 Bowman
 
 v.
 
 Humphrey,
 
 132 Iowa, 234, 109 N. W., 714, 6 L. R. A. (N.S.), 1111 (dumping refuse from creamery into creek);
 
 Kafka
 
 v.
 
 Bozio,
 
 191 Cal., 746, 218 P., 753, 29 A. L. R., 833 (negligence irrelevant in action to abate nuisance resulting from sinking building causing wall to overhang, trespass upon and damage plaintiff’s property);
 
 State, ex rel. Hopkins,
 
 v.
 
 Excelsior Powder Mfg. Co.,
 
 259 Mo., 254, 169 S. W., 267, L. R. A., 1915A, 615 (action to abate the maintenance of a powder factory located near a railroad and a village after a serious explosion as a re-
 
 *438
 
 suit of which the value of surrounding property was greatly depreciated).
 

 “Hence, negligence is not an essential or material element of a cause of action for nuisance and need not be proved, especially where the thing complained of is a nuisance
 
 per se.”
 
 Citing
 
 Dilucehio v. Shaw,
 
 31 Del., 509, 115 A., 771 (declaration against adjoining land owner, alleging that he wrongfully operated a hydraulic hammer so as to give forth shock, concussions and vibrations, which were communicated to plaintiff’s dwelling, held good on demurrer);
 
 Carlson
 
 v.
 
 Mid-Continent Development Co.,
 
 103 Kan., 464, 173 P., 910, L. R. A. 1918F, 318 (maintaining a pipeline 16 inches above ground along side a highway, whereby one using highway was injured);
 
 Boyle
 
 v.
 
 Neisner Bros., Inc.,
 
 230 Mo. App., 90, 87 S. W. (2d), 227 (maintaining a 200-pound steel door which opened about three feet over sidewalk, striking and injuring a pedestrian);
 
 McAndrews
 
 v.
 
 Collerd,
 
 42 N. J. Law, 189, 36 Am. Rep., 508 (keeping on private premises explosives which exploded, damaging adjacent property);
 
 City of Waco
 
 v.
 
 Rook
 
 (Tex. Civ. App.), 55 S. W. (2d), 649 (construction of waterworks dam which caused no physical damage, but by reason of potential danger of bursting, depreciated value of property below dam);
 
 Bartel
 
 v.
 
 Ridgefield Lumber Co.,
 
 131 Wash., 183, 229 P., 306, 37 A. L. R., 683 (substantial damage to plaintiff’s farm caused from smoke and sawdust from operation of sawmill);
 
 Wilson
 
 v.
 
 Phoenix Powder Mfg. Co.,
 
 40 W. Va., 413, 21 S. E., 1035, 52 Am. St. Rep., 890 (damage to plaintiff’s buildings resulting from last of six explosions in three years, of powder stored in de: fendant’s powder manufacturing plant located near highways and a railroad and across a river from a town);
 
 Trueheart
 
 v.
 
 Parker
 
 (Tex. Civ. App.), 257 S. W., 640 (action to restrain operation of dance hall across street from plaintiff’s residence because of
 
 *439
 
 din and noise);
 
 Kinney
 
 v.
 
 Koopman & Gerdes,
 
 116 Ala., 310, 22 So., 593, 37 L. R. A., 497 (explosion of gnn powder kept within corporate limits by defendant, causing damage to plaintiff’s property);
 
 Sroka
 
 v.
 
 Halliday,
 
 39 R. I., 119, 97 A., 965, Ann. Cas. 1918D, 961 (fireworks display, without license from city, causing unexploded bomb to fall on private property causing personal injury).
 

 “And recovery in an action for a nuisance cannot be defeated by showing there was no negligence on the part of the defendant.” Citing
 
 Kinnaird
 
 v.
 
 Standard Oil Co.,
 
 89 Ky., 468, 12 S. W., 937, 7 L. R. A., 451, 25 Am. St. Rep., 545 (action for damages for pollution of spring of water by large quantities of oil escaping from leaky barrels or casks);
 
 McAndrews
 
 v.
 
 Collerd, supra.
 

 “A nuisance does not rest on the degree of care used for that presents a question of negligence, but on the degree of danger existing even with the best of care. ’ ’ Citing
 
 Pearson
 
 v.
 
 Kansas City,
 
 331 Mo., 885, 55 S. W. (2d), 485;
 
 Boyle
 
 v.
 
 Neisner Bros., Inc., supra; Melker, an Infant,
 
 v.
 
 City of New York,
 
 190 N. Y., 481, 83 N. E., 565, 16 L. R. A. (N. S.), 621 (dictum — exploding mortar in exhibition of. fireworks given on Madison avenue, New York City, on election night injuring plaintiff, a spectator. Court charged jury that if fireworks were a nuisance, defendant city was liable, but refused to charge that it was a nuisance as a matter of law. Judgment following a verdict for defendant, affirmed on ground no nuisance as a matter of law);
 
 Brown
 
 v.
 
 Milwaukee Terminal Ry. Co.,
 
 199 Wis., 575, 224 N. W., 748 (dictum — tree, maintained in street, between sidewalk and curb, in front of defendant’s property, became rotten and fell, injuring plaintiff. Held, defendant was liable because rotten condition of tree had existed for such length of time that defendant ought to have discovered the dangerous condition
 
 *440
 
 and removed the tree before plaintiff sustained his injuries);
 
 Pitner
 
 v.
 
 Shugart Bros.,
 
 150 Ga., 340, 103 S. E., 791, 11 A. L. R., 1399 (operation of cotton gin throwing dirt and refuse into air damaging surrounding property).
 

 “Thus a person who creates or maintains a nuisance is liable for the resulting injury to others without regard to the degree of care or skill exercised by him to avoid such injury.” Citing
 
 District of Columbia
 
 v.
 
 Totten,
 
 5 F. (2d), 374, 40 A. L. R., 1461 (action for damages for maintaining a municipal workhouse near property of plaintiff, and permitting inmates to terrorize plaintiff and to trespass upon his property);
 
 Frost v. Berkeley Phosphate Co.,
 
 42 S. C., 402, 20 S. E., 280, 46 Am. St. Rep., 736, 26 L. R. A., 693 (action for damages for allowing the escape of noxious gases onto premises of plaintiff);
 
 McAndrews
 
 v.
 
 Collerd, supra; Terrell
 
 v.
 
 Chesapeake & Ohio Ry. Co.,
 
 110 Va., 340, 66 S. E., 55, 32 L. R. A. (N. S.), 371 (action for damages caused by soot and cinders from railroad engines coming onto the lands of plaintiff).
 

 Summarized, then, absolute nuisance may be defined as a distinct civil wrong, arising or resulting from the invasion of a legally protected interest, and consisting of an unreasonable interference with the use and enjoyment of the property of another; the doing of anything, or the permitting of anything under one’s control or direction to be done without just cause or excuse, the necessary consequence of which interferes with or annoys another in the enjoyment of his legal rights; the unlawfully doing of anything, or the permitting of anything under one’s control or direction to be done, which results in injury to another; Or the collecting and keeping on one’s premises of anything inherently dangerous or likely to do mischief, if it escapes, which, escaping, injures another in the enjoyment of his legal rights.
 

 
 *441
 
 But, as above stated, tbe term “nuisance” has also come to be applied to situations where liability is dependent upon the failure to exercise due care.
 
 Hayes
 
 v.
 
 Brooklyn Heights Rd. Co.,
 
 200 N. Y., 183, 93 N. E., 469. Such application represents the fourth type of wrong as above classified. It most frequently consists of acts or conditions involving unreasonable risk of harm resulting in personal injury. In such case, of course, negligence must be averred and proven to warrant a recovery. Bates Pleading and Practice, 1925, Section 2171a. Applying such connotation, “nuisance” may be and frequently is the consequence of negligence.
 

 The learned discussion of Judge Cardozo in the leading case of
 
 McFarlane
 
 v.
 
 City of Niagara Falls,
 
 247 N. Y., 340, 160 N. E., 391, 57 A. L. R., 1, while dealing primarily with the proposition that contributory negligence is available as a defense to an action for nuisance based upon negligence, nevertheless is helpful in pointing out the distinction above referred to. In that case the plaintiff sought damages for injuries suffered because of a defectively constructed sidewalk. Tbe case was tried upon the theory of absolute nuisance. The jury was told, in substance, that a nuisance existed if the city maintained the walk in a dangerous condition. The evidence showed danger in an unreasonable degree. Judge Cardozo said:
 

 “If danger there was, then also there was nuisance, though nuisance growing out of negligence. Nuisance as a concept of the law has more meanings than one. The primary meaning does not involve the element of negligence as one of its essential factors
 
 (Heeg
 
 v.
 
 Licht,
 
 80 N. Y., 579 [36 Am. Rep., 654]). One acts sometimes at one’s peril. In such circumstances, the duty to desist is absolute whenever conduct, if persisted in, brings damage to another (21 Halsbury, Laws of England, p. 507, Section 845). Illustrations
 
 *442
 
 are abundant. One who emits noxious fumes or gases day by day in the running of his factory may be liable to his neighbor though he has taken all available precautions
 
 (McCarty
 
 v.
 
 Nat. Carbonic Gas Co.,
 
 189 N. Y., 40 [13 L. R. A. (N. S.), 465, 81 N. E., 549]). He is not to do such things at all, whether he is negligent or careful. One who digs a hole in the highway will not be heard to say if he dug it without license that the guards placed about it were destroyed without his fault
 
 (Congreve
 
 v.
 
 Smith,
 
 18 N. Y., 79;
 
 Wolf
 
 v.
 
 Kilpatrick,
 
 101 N. Y., 146 [54 Am. Rep., 672, 4 N. E., 188]). He was a wrongdoer in digging, and diligence in guarding does not eradicate his fault. Other situations there are, however, where what was lawful in its origin may be turned into a nuisance by negligence in maintenance. The coal hole, built under a license, may involve a liability for nuisance, if there is negligence in covering it
 
 (Trustees of Canandaigua v. Foster,
 
 156 N. Y., 354 [41 L. R. A., 554, 66 Am. St. Rep., 575, 50 N. E., 971]). The tumbledown house abutting on a highway is transformed into an unlawful structure if its ruinous condition is a menace to the traveler
 
 (Timlin
 
 v.
 
 Standard Oil Co.,
 
 126 N. Y., 514 [22 Am. St. Rep., 845, 27 N. E., 786]). In these and like situations, the danger being a continuing one, is often characterized as a nuisance, though dependent upon negligence. Indeed, one of the most familiar instances of nuisance is a highway out of repair (Pollock, Torts [10 Ed.], p. 1016). Narrow, too, is the line between nuisance and negligence. One can create a nuisance by leaving a wagon in the street
 
 (Cohen
 
 v.
 
 Mayor of New York,
 
 113 N. Y., 532 [4 L. R. A., 406, 10 Am. St. Rep., 506, 21 N. E., 700]). If the danger threatens the public, the nuisance is classified as common; private, if it threatens one person or a few * * #.
 

 “The rule to be extracted from these and like cases
 
 (e. g., Chisholm
 
 v.
 
 State,
 
 141 N. Y., 246 [36 N. E., 184];
 
 *443
 

 Morrell
 
 v.
 
 Peck,
 
 88 N. Y., 398;
 
 Minick
 
 v.
 
 Troy,
 
 83 N. Y., 514), may now be formulated. At least where the substance of the wrong ■ is negligence, a plaintiff, though pleading nuisance, is under a duty to show care proportioned’to the danger. * * *
 

 “What we rule in this case is limited to a situation where negligence is the basis of the nuisance, and this for the reason that nothing more is called for by the facts. The defendant was not doing an act inherently unlawful when it paved the city streets. Power to regulate the streets had been given by the charter. What was dangerous and wrong did not inhere in the work contracted to be done, but in the manner of its doing
 
 (Hyman
 
 v.
 
 Barrett,
 
 224 N. Y., 436, 439 [121 N. E., 271]). The nuisance was not absolute.”
 

 As pointed out by Judge Cardozo in the foregoing-quotation, there are certain situations in which what was lawful may be turned into a nuisance by negligence in maintenance, and in which a continuing danger resulting in harm is often characterized as a nuisance although dependent upon negligence, as in the case of a highway out of repair.
 
 Klepper
 
 v.
 
 Seymour House Corporation of Ogdensburg, Inc.,
 
 246 N Y., 85, 158 N. E., 29, 62 A. L. R., 955 (maintaining a roof which for many years periodically collected and discharged large masses of snow and ice upon adjacent sidewalks);
 
 Smith
 
 v.
 
 Bonner,
 
 63 Mont., 571, 208 P., 603 (maintaining tree over insecure foundation near a street as a result of which, tree fell killing a traveler);
 
 Olivas
 
 v.
 
 El Paso Electric Co.
 
 (Tex. Civ. App.), 54 S. W (2d), 154 (maintaining livewire after discontinuance of service, causing-
 
 electrocution); Waterhouse v. Joseph Schlitz Brewing Co.,
 
 12 S. D., 397, 81 N. W., 725, 48 L. R. A., 157 (maintaining negligently constructed building which fell injuring one lawfully on the premises);
 
 City of Franklin
 
 v.
 
 Harter,
 
 127 Ind., 446, 26 N. E., 882 (outside, cellarway leading from street to
 
 *444
 
 basement, partially guarded by iron railing). This court has applied such a rule to a boiler explosion
 
 (Huff
 
 v.
 
 Austin,
 
 46 Ohio St., 386, 21 N. E., 864, 15 Am. St. Rep., 613); to the storage of water by a water company engaged in supplying water to the public, when the action is based upon negligence
 
 (Defiance Water Co.
 
 v.
 
 Olinger,
 
 54 Ohio St., 532, 44 N. E., 238, 32 L. R. A., 736); to the escape of oil from a tank, which oil ignited and burned adjoining property
 
 (Langabaugh
 
 v.
 
 Anderson,
 
 68 Ohio St., 131, 67 N. E., 286, 62 L. R. A., 948); and to the emission of sparks from a railroad locomotive (Ruf
 
 fner
 
 v.
 
 Cincinnati, H. & D. Rd. Co.,
 
 34 Ohio St., 96). See, also,
 
 Marsh
 
 v.
 
 Lake Shore Electric Ry.,
 
 7 C. C. (N. S.), 405, 18 C. D., 9 (escape of high voltage electric current).
 

 The Court of Appeals of New York in the case of
 
 Hayes
 
 v.
 
 Brooklyn Heights Rd. Co., supra,
 
 makes the distinction between absolute and qualified nuisance or nuisance dependent upon negligence as applied to municipal corporations, as follows:
 

 “If a municipality * * * should dig a pit, or place a dangerous obstruction in or upon a public street, which it was obligated to keep in repair, it would be the creation of a public nuisance and unquestionably the party creating the nuisance would be liable to a person suffering injuries by reason thereof. So also an individual maintaining a coal hole in the sidewalk in front of his premises with an insufficient cover, or who constructs a water pipe which receives the water collected from the roof of his building and discharges it on the surface of the sidewalk, from which ice forms as the water flows across it to the gutter, becomes liable therefor as the creator of a nuisance irrespective of any question of negligence
 
 (Clifford
 
 v.
 
 Dam,
 
 81 N. Y., 52;
 
 Tremblay
 
 v.
 
 Harmony Mills,
 
 171 N. Y., 598 [64 N. E., 501]).
 

 • “But where the obstruction to a public street has
 
 *445
 
 resulted from other causes or from the acts of others than that of the municipality a different rule obtains with reference to its liability. In such cases the municipality is not the creator of the nuisance but it becomes its duty to abate and remove the same, to the end that the public may pass safely over the public street. It is not called upon to abate and remove until it has notice of the existence of the obstruction, or such time has elapsed after the existence of the obstruction as will raise a presumption that the municipality or its officers had notice, or in the exercise of due diligence should have had such notice. In such cases the failure to abate or remove the obstacle involves a question of negligence. For, if it proceeds with reasonable diligence to remove the same no recovery can be had against the municipality. But if it unreasonably suffers the nuisance to exist it does so by reason of its negligence and such becomes the basis of its liability.”
 

 As distinguished from absolute nuisance, a qualified nuisance or nuisance dependent upon negligence consists of anything lawfully but so negligently or carelessly done or permitted as to create a potential and unreasonable risk of harm which, in due course, results in injury to another.
 

 The foregoing discussion has been deemed necessary to point the way to the application of the proper rule under the circumstances of the present case. It may now be specifically inquired as to what was the liability of the defendant in the maintenance of the tree in question upon the highway, under Section 3714, General Code, requiring the defendant to keep its streets “open, in repair, and free from nuisance.”
 

 The maintenance of trees within a highway is not unlawful. In fact, our statutes specifically authorize the planting of trees or shrubbery along or upon public highways. See Section 7468, General Code. While a municipal corporation has control of its streets and
 
 *446
 
 may lawfully make excavations therein or constructions thereon for proper purposes, doubtless if it should dig a deep trench across a street or place an obstruction in the traveled portion thereof in the nighttime without guards, making travel thereon necessarily dangerous, the municipality might be subject to strict liability under the rules above set out; but so long as its conduct, is not unlawful or extra hazardous, the municipality is liable for injuries resulting only from its negligent failure to take proper precautions by the removal of obstructions, or by the erection of barriers, guardrails, lights or otherwise, to safeguard travelers against dangerous obstructions, defects or conditions in streets ánd other public ways.
 

 When a statute creates a right of action against a municipality in respect to its care of streets, the nature and extent of the action depends solely on the statute. ‘ ‘ The statute may turn the public, wrong into a private wrong, and in broad terms make the corporation liable as a private corporation for common-law negligence; in such case the action authorized would differ little from the common-law action of negligence. This seems to be the result of highway legislation in many of the states, and in those states an action to recover for injury caused by. a defect in the highway is properly ■treated as substantially a common-law action of negligence.”
 
 Bartram
 
 v.
 
 Town of
 
 Sharon, 71 Conn., 686, 692, 43 A., 143, 71 Am. St. Rep., 225, 46 L. R. A., 144. See
 
 Gibson
 
 v.
 
 City of
 
 Huntington, 38 W. Va., 177, 18 S. E., 447, 22 L. R. A., 561, 45 Am. St. Rep., 853;
 
 Village of Groveport
 
 v.
 
 Bradfield,
 
 2 C. C., 145, 1 C. D., 411, affirmed, without opinion, see 30 W. L. B., 351.
 

 Section 3714, General Code,' does not enjoin upon muncipalities specific legal requirements such as ordinary safety statutes, but provides a general rule of conduct and makes negligence the basis of liability for its violation, unless an absolute nuisance is proven
 
 *447
 
 to exist. The rule in this respect, summarized from the cases decided by the courts of this state, is stated in 28 Ohio Jurisprudence, 976, Section 613, as follows:
 

 “The duty resting upon municipal corporations, under Section 3714, General Code, to keep their streets and other public ways ‘open, in repair, and free from nuisance,’ requires reasonable care and vigilance, in view of all the surroundings, to keep such streets and ways in a reasonably safe condition for travel in the usual and ordinary modes, but does not exact that which is impracticable. They are not insurers of the safety of their public way's, and are liable only for negligence in failing to repair, remove, or guard against defects or obstructions, after actual or constructive notice of their existence.
 

 “The standard of the care required to be exercised by municipal authorities in keeping streets in repair and free from nuisance is * * * that care which persons of reasonable and ordinary prudence exercise under like circumstances and conditions.” See
 
 City of Dayton
 
 v.
 
 Glaser,
 
 76 Ohio St., 471, 81 N. E., 991, 12 L. R. A. (N. S.), 916;
 
 Gibbs
 
 v.
 
 Village of Girard,
 
 88 Ohio St., 34, 102 N. E., 299;
 
 Village of Oak Harbor
 
 v.
 
 Kallagher,
 
 52 Ohio St., 183, 39 N. E., 144.
 

 Municipalities, in the management and control of their streets and public grounds, act in a governmental capacity and hence are not liable in such connection unless liability is expressly imposed by statute. But in this state, even though municipalities are required by Section 3714, General Code, to keep their streets open, in repair and free from nuisance, they are liable in damages for injury sustained only in consequence of their failure to use due care to keep them in a reasonably safe condition for public travel.
 
 City of Wooster
 
 v.
 
 Arbenz,
 
 116 Ohio St., 281, 156 N. E., 210, 52 A. L. R., 518; 25 American Jurisprudence, 641, Section 348.
 

 
 *448
 
 “A municipal or gwasi-municipal corporation is not responsible for every accident that may occur on its streets or highways, nor is it a guarantor of the safety, of travelers thereon or an insurer against all injury which may result from obstructions or defects therein * * *. So far as concerns liability for injuries caused by obstructions and defects in its public ways, not due to its own wrongful act, its duty, and sole duty, in the absence of any statutory provision imposing a higher duty, is to exercise reasonable diligence to put and keep them in a reasonably safe condition for the uses for which they were established and to which they are properly subject.” 25 American Jurisprudence, 669, Section 373, citing
 
 City of Dayton
 
 v.
 
 Glaser, supra; City of Columbus
 
 v.
 
 Penrod,
 
 73 Ohio St., 209, 76 N. E., 826, 112 Am. St. Rep., 716, 3 L. R. A. (N.S.), 386;
 
 Chase
 
 v.
 
 City of Cleveland,
 
 44 Ohio St., 505, 9 N. E., 225, 58 Am. Rep., 843. See, also,
 
 City of Zanesville v. Forman,
 
 53 Ohio St., 605, 42 N. E., 703, 53 Am. St. Rep., 664;
 
 Village of Cardington
 
 v.
 
 Admr. of Fredericks,
 
 46 Ohio St., 442, 447, 21 N. E., 766.
 

 This court had this problem definitely before it in the case of
 
 City of Cleveland
 
 v.
 
 Amato,
 
 123 Ohio St., 575, 176 N. E., 227, wherein it was held that “The duty imposed upon municipalities by the provisions of Section 3714, General Code, is the exercise of ordinary care to keep its streets, sidewalks, and other public ways open, in repair and free from nuisance. Liability for damages for failure to perform such duty cannot arise except upon proof either that its agents or officers actually created the faulty condition from which injury resulted or that it had notice thereof, actual or constructive.” Of course, after notice, the municipality would become liable only upon failure to exercise due care in remedying the defect. See, also,
 
 City of Cleveland
 
 v.
 
 Pine,
 
 123 Ohio St., 578, 176 N. E., 229, 74 A. L. R., 1224.
 

 
 *449
 
 These cases have never been modified or reversed, and in the judgment of this court, correctly state the basis of liability of municipalities of -this state, under Section 3714, General Code.
 

 Clearly, under such circumstances, liability turns upon the question of negligent conduct. See
 
 Village of Oak Harbor
 
 v.
 
 Kallagher, supra; City of Fremont
 
 v.
 
 Dunlap,
 
 69 Ohio St., 286, 69 N. E., 561 (the falling of billboard maintained on the side of a street);
 
 Sturzinger
 
 v.
 
 City of Sandusky,
 
 28 Ohio App., 263, 162 N. E., 684 (grass permitted to grow on streets so as to conceal fire hydrant placed within the street);
 
 Village of Barnesville
 
 v.
 
 Ward,
 
 85 Ohio St., 1, 96 N. E., 937, 40 L. R. A. (N. S.), 94 (maintenance of a wire on posts to protect a lawn strip);
 
 Trustees of Village of Canandaigua
 
 v.
 
 Foster,
 
 156 N. Y., 354, 50 N. E., 971, 66 Am. St. Rep., 575, 41 L. R. A., 554 (coalhole in the street, under license but negligently covered).
 

 • It is apparent that the trial court, because of confusion in court opinions, fell into confusion in its charge in submitting this case to the jury. In the course of the charge the court said:
 

 “This is not a case in which the plaintiff claims that the city of Cincinnati was negligent; but the plaintiff does claim that the defendant failed to perform a duty that devolved upon it as a municipal corporation in regard to this particular road, and because it was not as claimed by the plaintiff, open, in repair and free from nuisance.”
 

 After giving this section of the charge, the court further said to the jury:
 

 “Municipalities, however, are not insurers of the safety of the streets and highways, but are required to exercise ordinary care in keeping' their streets and highways in a reasonably safe condition, and a failure of duty in this respect is a violation of the statute of the state which I have just read to you.”
 

 
 *450
 
 The cases cited by plaintiff, for the purpose of showing that the tree in question was a nuisance, are not in conflict with the principles herein enunciated. This court holds that there was in this case an issue as to the existence of a nuisance dependent upon negligence, but not as to the existence of an absolute nuisance. The test of liability, a question for the jury, is whether in permitting the tree in question to remain in such close proximity to the paved portion of the highway, the defendant exercised due and ordinary care.
 

 In each of the cases of
 
 Yackee, Admx.,
 
 v.
 
 Village of Napoleon,
 
 135 Ohio St., 344, 21 N. E. (2d), 111;
 
 Kocher
 
 v.
 
 City of Barberton,
 
 140 Ohio St., 240, 42 N. E. (2d), 977;
 
 City of Springfield
 
 v.
 
 McDaniel,
 
 45 Ohio App., 87, 186 N. E., 741, 13 Ohio Law Abs., 502;
 
 Craig
 
 v.
 
 City of Toledo,
 
 60 Ohio App., 474, 21 N. E. (2d), 1003; and
 
 Miller
 
 v.
 
 City of Dayton,
 
 70 Ohio App., 173, 41 N. E. (2d), 728, 35 Ohio Law Abs., 505, cited by plaintiff, the issue was made as to whether a nuisance had been permitted to exist by, or had been created by reason of, the negligence of the defendant municipalities. This was a question for the jury in each of these cases as it was in the case at bar.
 

 The plaintiff in her amended petition in this case sought to state a case of absolute nuisance but the proof failed to establish such a cause of action. However, the trial court, notwithstanding the theory of plaintiff’s amended petition, submitted to the jury the issue of negligence of the defendant city as a basis of recovery, which was the only theory upon which plaintiff was entitled to recover. In this the trial court did not commit error. See
 
 Village of Cardington
 
 v.
 
 Admr. of Fredericks, supra.
 
 The verdict of the jury absolved tlic defendant from liability. In other words, it found no negligence on the part of the defendant, and consequently, no nuisance.
 

 
 *451
 
 The judgment of the Court of Appeals is reversed and that of the Common Pleas Court is affirmed.
 

 Judgment reversed.
 

 Matthias, Zimmerman, Bell and Turner, JJ., concur.
 

 Weygandt, C. J., and Williams, J., dissent.