PRASS, A MINOR, APPELLEE, *v.* CITY OF CINCINNATI, APPELLANT.

(No. 7673—Decided March 16, 1953.)

*Mr. Gordon H. Scherer* and *Mr. Louis J. Schneider, Jr.,* for appellee.

*Mr. Henry M. Bruestle,* city solicitor, *Mr. J. B. Grause, Jr.,* and *Mr. Maurice W. Jacobs,* for appellant.

HILDEBRANT, J. In alighting from the rear door of a bus at a designated stop at the northwest corner of

Vine and 7th Streets in the city of Cincinnati, the plaintiff stepped down upon a metal mushroom-shaped cap over the water service into the building at that point and fell to the sidewalk receiving injuries to her foot, for which the judgment for damages here appealed from on questions of law was entered following the verdict of a jury. The iron cover was circular, being seven and one-half inches in diameter, rising to its maximum height in the center of approximately one inch, with a minimum height of one-half inch at the perimeter, fitting flush with the sidewalk at a point about 12 inches from the curb, and held in place by an extension on the bottom, fitting as a collar down into the hole which it was designed to cover.

It is conceded that liability of the city must be predicated upon proof of dereliction of its statutory duty under Section 3714, General Code, to keep its streets open, in repair, and free from nuisance.

It appears from the record that this accident occurred about 2 p. m. of a clear, bright, dry October day, and that plaintiff was the first passenger alighting from the rear exit of the bus which was equipped with double doors, requiring pushing through by the person alighting, and that on this particular day the bus stopped in such a position that the metal covering on the sidewalk was directly in line with the center of the rear exit of the bus and directly in front of the passenger alighting. It was, therefore, plainly and prominently visible to anyone alighting from the bus.

Since the cap had been placed by the city in lawful exercise of a governmental function the court ruled out of consideration by the jury the question of absolute nuisance, and, also, charged that there was no evidence of any defect in the water cap and that having placed it there originally there was no question of notice in the case.

The court stated the question presented to the jury was whether or not it (the metal cap) is a nuisance by being an inch or inch and a half above the sidewalk.

The record negatives any suggestion of danger from the metal cap to the ordinary pedestrian's use of the sidewalk. It is only when in position it happens to be directly in line with the center of the rear exit to the bus in the area upon which passengers are required to alight that any element of danger arises which might be said to create a potential and unreasonable risk of harm, which would satisfy the definition of a qualified nuisance. Without reiterating here the numerous statements as to the duty of the city under the statute and the distinction between absolute and qualified nuisance, we refer to the lengthy discussion contained in *Taylor* v. *City of Cincinnati,* 143 Ohio St., 426, 55 N. E. (2d), 724, 155 A. L. R., 44, upon those subjects.

Assuming the court to have been correct in submitting the case to the jury, we call attention to the testimony of the plaintiff as to what happened:

"Q. Pardon me, how close was the bus to the curb when it came to the stop, to the curb of the sidewalk? A. The wheels were, I imagine, right next to the curb because I stepped—

"Q. When it came to a stop, were you the—who was the first person to leave the middle door at Seventh and Vine? A. I was.

"Q. Do you recall whether any persons were behind you or not? A. Yes, there were.

"Q. What did you do after the bus came to a stop? A. Why, I was standing there, I was the first one to get off and I pushed the door open. As I was pushing the door open, I started to step and just as I was—I was off balance and my foot hit the object *I saw it*—I slid off it and turned my ankle, the bone in my foot.

"*  *  *

"Q. As you pushed the door open will you tell the jury what you did? A. As I pushed, I started to step, in the process of stepping I looked down and I saw it. I pushed the door open and naturally I looked for the sidewalk with my foot out. I seen it all in the same motion I pushed the door open, the fraction of a second before I hit it I saw it * * *.

"Q. Now when you say you saw it, will you tell the jury what you stepped on? A. Well, it was rounded and smooth, a round brass object.

"Q. About how big was it? A. About three and a half inches or bigger, I don't know. All I could describe in inches, about seven and a half inches, I think that's what it was.

"Q. You mean across. A. In diameter, across.

"Q. About how high was it? A. About an inch and a half off the ground.

"Q. Would you describe the top shape of it? A. Mushroom-shaped top, it was round, it was smooth. There was no flat top to it.

"Q. When your foot hit it, what happened to the rest of your body? A. My foot hit it and it slid and I guess, turned. I just came down with all my weight on that foot.

"Q. Did you fall? A. I fell to the sidewalk.

"Q. This object that you have just described, this metal object, where was it with reference to the middle door of the bus where you got out? A. It was right in the middle of the door.

"Q. How far, about, was it from the edge of the curb? A. It was—gosh, about six inches, a foot maybe, I doubt if it was as big as a foot away from the curb.

"Q. It was on the sidewalk? A. It was on the sidewalk."

This court in *Stoffel* v. *City of Cincinnati*, 87 Ohio App., 235, 93 N. E. (2d), 303, in substance, has expressed the view that due care does not require the pedestrian to walk with eyes glued to the surface of the sidewalk in search of possible defects. However, where one is required to step down in alighting from a bus, due care would seem to require visual examination of the surface area upon which such person is about to step.

The condition here was clearly apparent. She testified she saw it, but being off balance stepped upon it anyway, which statement carries with it the implication that she stepped with more than normal emphasis proportionate to her unbalance. Such testimony on the part of the plaintiff seems clearly to bring the case within the rule stated in *Winkler* v. *City of Columbus*, 149 Ohio St., 39, 77 N. E. (2d), 461, wherein it is stated in the syllabus:

"Where, in an action for personal injury, plaintiff's testimony amounts to an admission that she was guilty of negligence at the time and place, which contributed directly to her injury, it is the duty of the trial court to sustain a motion for a directed verdict in favor of defendant. (Paragraph four of the syllabus of *New York Central Rd. Co.* v. *Stevens, Admr.*, 126 Ohio St., 395, approved and followed.)"

In the body of the opinion at page 44, the court said:

"The Court of Appeals assumed that because plaintiff testified one way in chief and contrarily on cross-examination, the case should be left to the jury to choose between her conflicting statements. That would be proper in the case of an ordinary witness, but where the testimony involved is that of the plaintiff and the plaintiff's testimony whether in chief or cross-examination, discloses negligence on the part of plaintiff con-

tributing directly to her injury the *fact* has been settled and the matter becomes a question of law to be determined by the court.''

The judgment is, therefore, reversed, and final judgment is entered for the defendant.

*Judgment reversed.*

MATTHEWS, P. J., and Ross, J., concur.