150

(No. 8787—Decided November 21, 1967.)

*Mr. Thomas W. Applegate,* for appellant.
*Mr. John C. Young,* city attorney, and *Mr. Alba L. White-side,* for appellees.

Troop, J.  The city of Columbus owns land located in Perry Township, Franklin County, known as Hoover Park and used for park purposes for approximately 50 years.  The city contemplated the creation of a campsite for trailers and tents within the Hoover Park area.  It appears that the camping facilities were to be made available for recreational purposes as opposed to sites for living quarters.  Plaintiff in the trial court, Pauline A. McDonald, a neighboring property owner to Hoover Park, sought to restrain the city from completing the campsite, already begun, claiming a violation of the Franklin County

Zoning Resolution (November 16, 1948), and urging that the park area was restricted because it was situated within the unincorporated territory of the county and outside the corporate limits of the municipality. The trial court refused to permanently enjoin the city from using Hoover Park as contemplated. This appeal is from that final order.

In a decision on a demurrer in the instant case Judge Gessaman aptly observes that the problem presented concerns "the comparative rights of two political subdivisions of the state." The city urges superiority by virtue of the right of eminent domain, and the plaintiff urges the controlling force of a county zoning resolution. Whatever the ramifications, or however circuitous the route traveled, the single issue arises because the asserted right of the city runs head on into an exercise of power by the county. This discussion is addressed to that problem.

Conflicts such as this have not been litigated very many times in Ohio, or elsewhere. The superior position of the sovereign state of Ohio as relates to subdivisions seems clear from the decision in *State, ex rel. Ohio Turnpike Commission,* v. *Allen, Secy.-Treas.* (1952), 158 Ohio St. 168. That one municipal corporation has just as much right and authority as another when they collide is apparent from the decision in *Blue Ash* v. *Cincinnati* (1962), 173 Ohio St. 345. No Ohio decision has been cited or found that squarely decides the comparative rights of county and city when the exercise of authority by a county infringes upon, or limits or violates, the exercise of authority by a city.

First, it should be noted that an Ohio county is a wholly subordinate political subdivision deriving whatever authority it exercises from legislative enactment. No county of the 88 has taken advantage of Sections 1 and 3, Article X, of the Ohio Constitution, and, therefore, they must have statutory authority to do what they do. (14 Ohio Jurisprudence 2d 201, Section 4 *et seq.*) Any exercise of police power by a county must be predicated upon a delegation of that power to the county by the Legislature.

At this point it is well to emphasize that zoning by a county is an exercise of police power, as authorized by statute, for the safety, health, morals, convenience, comfort or general welfare

of the people (101 Corpus Juris Secundum 683, Section 7), and in Ohio that specific exercise of police power is "in the unincorporated territory of such county" (Section 303.02, Revised Code), and, except for a limited time, specifically excluded from "within municipal corporations" (Section 303.18, Revised Code).

Municipal corporations derive basic power from Section 3, Article XVIII of the Ohio Constitution, approved September 3, 1912. The courts have consistently held that the authority "to exercise all powers of local self-government" comes directly from the Constitution. (See *Perrysburg* v. *Ridgway, A Taxpayer* [1923], 108 Ohio St. 245, and other decisions.) In addition, the constitutional provision empowers the municipality "to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

There is no doubt that the providing of parks, playgrounds, and recreation centers is a power of local self-government. Such power is recognized and supported by a variety of legislative enactments that detail the procedures for the land acquisition and supervisory control of such projects. A number of sections of the Revised Code are noted. A variety of methods of securing land for "public grounds, parks, park entrances, free recreation centers" is provided in Section 715.21, Revised Code, as well as the power to "hold, improve, protect, and preserve" such areas.

Free recreation centers are covered in Section 717.01 (K), Revised Code. A municipality may appropriate and hold real estate for parks, etc., purposes "within its corporate limits" under Section 719.01 (B), Revised Code, and for the same purposes, "outside the limits of the municipal corporation" under Section 719.02, and broad possibilities of operation are provided in Section 755.12, Revised Code.

Section 3, Article XVIII of the Ohio Constitution, having authorized the exercise of the police power only "within their limits," by regulations not in conflict with general laws, the Legislature by statutory enactment extended the police power exercisable by the municipality to lands it owns and uses "beyond its limits for a municipal purpose" for the protection of the property (Section 715.50, Revised Code).

Provision for parks and recreational facilities is an exercise of local self-government, and there appears to be no constitutional barrier confining such exercise to the geographical area of the city proper. Only the exercise of the police power is so limited. Statutes, Sections 719.02 and 755.12, Revised Code, provide for ownership and control of parks by municipal corporations outside territorial limits. Such legislative enactments authorize the exercise of a power of self-government over corporate-owned lands located outside corporate boundaries. There is no statutory authority given counties for the exercise of the police power zoning within those areas.

Casual and incidental support for the conclusion that county authority must yield to municipal when they meet head on comes from *Yorkavitz* v. *Board of Township Trustees of Columbia Township* (1957), 166 Ohio St. 349, which held that whatever zoning power a township has "is limited to that which is expressly delegated to them by statute." (Page 351.) Townships and counties have exactly the same governmental standing. See, also, *State, ex rel. Ranz,* v. *Youngstown* (1942), 140 Ohio St. 477, for a discussion of the status of a county. Fortunately, county and city worked together in *Ranz.*

The text material in 101 Corpus Juris Secundum 683, Section 7, mentions the conflict of statutory authority and local zoning, suggesting that the special statutory right will prevail. Illustrations were the right of a public school board to acquire school sites and that of health authorities to fix the location of hospitals.

An interesting conflict between political subdivisions, a Metropolitan Park Board and Bay Village, over expanding park activity to include a refreshment stand in contravention of city zoning laws, was resolved in favor of the board (*Board of Park Commrs.* v. *Bay Village* [1957], 78 Ohio Law Abs. 389). The court strongly implies that the result reached rested upon the belief that a responsible governmental unit would not permit the new service to become a nuisance and detriment to the surrounding residential area.

The completely responsible legislative authority of a municipal corporation is presumed to exercise powers of local self-government in such a way as to avoid the creation of a nuisance.

154

In the trial of this case, two judges covered completely and well many facets of the law. There is no point in discussing what they have covered so well. We conclude that the constitutional authority given a municipality by Section 3, Article XVIII, Ohio Constitution, to exercise powers of local self-government does not preclude the exercise of such powers outside its geographical limits, the phrase "within their limits" having reference only to the exercise of its police powers.

The Franklin County Zoning Resolution (November 16, 1948) does not purport to be applicable to territory within the geographical limits of any municipality or as to territory owned or controlled by such municipality in the exercise of the powers of local self-government. Furthermore, nowhere in Chapter 303, Revised Code, is there any authority conferred upon a county to control territory owned, controlled, or used by a municipality in the exercise of the powers of self-government.

In the exercise of its powers of local self-government the authority of the city of Columbus supersedes the exercise of police power by Franklin County expressed in zoning regulations.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

DUFFY and HERBERT, JJ., concur.