**HUNSCHE et al., Appellees,**

v.

**CITY OF LOVELAND, Appellant.**

[Cite as *Hunsche v. Loveland* (1999), 133 Ohio App.3d 535.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–980244.

Decided April 16, 1999.

536

*Cors & Bassett, Kevin R. Feazell* and *David J. Schmitt,* for appellees.

*Manley, Burke, Lipton & Cook, Gary E. Powell* and *Susan M. Gertz,* for appellant.

WINKLER, Judge.

Appellees filed suit against the city of Loveland, claiming negligence, negligence *per se,* statutory nuisance, common-law nuisance, and trespass for the city's alleged misconduct in allowing sediment from a city-owned park to flow into, and thereby damage, appellees' pond. The trial court found in favor of appellees on all counts and awarded compensatory and punitive damages, as well as attorney fees. The city appeals from that order.

## I.  FACTS

The city owns Boike Park, which is located in Symmes Township, outside the Loveland city limits. Appellees are owners of properties within the Chatham Woods subdivision in Symmes Township. The park is adjacent to a large pond that occupies portions of appellees' properties.

Prior to the city's activities in Boike Park, appellees' pond was an aesthetically pleasing and ecologically well-balanced pond. The pond featured an electric pump, capable of being lit in the evening, which created a fountain of water that served to oxygenate the pond and minimize mosquito breeding through water movement.

In late 1995 or early 1996, the city caused large amounts of earth material to be deposited in Boike Park. The city failed to maintain effective erosion-control measures, thus drastically increasing the amount of water flow and sediment draining from the park into appellees' pond. As a result of the city's activities in Boike Park, the pond became mud-filled, thereby disabling the pump. In turn, mosquitoes, pests, and bad odors increased. As a result, appellees were deprived of the use and enjoyment of the pond and portions of their property adjacent to the pond.

The city assigns as error (1) the trial court's finding that no extraterritorial immunity exists for the city's activities in Boike Park, (2) the trial court's failure to grant judgment for the city where appellees failed to plead or argue an

exception to political subdivision immunity, (3) the trial court's failure to grant judgment to the city based on immunity, (4) the trial court's award of punitive damages and attorney fees against the city; and (5) the trial court's allowance of a damages hearing. We review each of these assignments of error in turn.

## II. EXTRATERRITORIAL IMMUNITY

The city claims that the trial court erred in deciding that the city was not immune for activities occurring in Boike Park because the park was outside the city's territorial limits. We agree. R.C. 2744.02(A)(1) establishes for political subdivisions, including municipalities, immunity from liability for losses in connection with functions defined within the statute as governmental or proprietary functions. The construction and maintenance of a park by a municipality is a governmental function. R.C. 2744.01(C)(2)(u). Nothing within the statute limits governmental functions to actions that occur within the boundaries of the municipality. *Perry v. E. Cleveland* (Feb. 16, 1996), Lake App. No. 95–L–111, unreported, 1996 WL 200558. Nor is there a constitutional barrier confining the city's power to provide for parks to the geographical area of the city proper, where provision for parks is made in the exercise of local self-government. *McDonald v. Columbus* (1967), 12 Ohio App.2d 150, 41 O.O.2d 228, 231 N.E.2d 319.

Furthermore, a municipality may exercise powers of local self-government beyond its territorial limits if that is authorized by statute. *Springfield v. All Am. Food Specialists* (1993), 85 Ohio App.3d 464, 620 N.E.2d 120, citing *Prudential Co–Operative Realty Co. v. Youngstown* (1928), 118 Ohio St. 204, 160 N.E. 695. The establishment and maintenance of parks is a power of local self-government that a municipality is statutorily empowered to exercise either inside or outside its corporate limits. R.C. 719.01(B) and 719.02. Therefore, acts or decisions relating to, or occurring on, a municipality's extraterritorial property are entitled to the same immunity protection as those occurring on lands within the borders of the municipality. *See Perry, supra.* Thus, we hold that the city's construction and maintenance of Boike Park is a governmental function afforded the immunity protections of R.C. 2744.02(A)(1). Although this aspect of the city's argument in its first assignment of error is well taken, the assignment itself is not, for the reasons given as we turn our attention to the statutory exceptions to a municipality's immunity, and the nonliability defenses that a municipality may assert, to determine whether any of the exceptions or defenses apply.

## III. EXCEPTIONS TO IMMUNITY

The city's immunity for a governmental function remains subject to the

five exceptions of former R.C. 2744.02(B),[1] in effect at the time of this action. *Cater v. Cleveland* (1998), 83 Ohio St.3d 24, 697 N.E.2d 610. The city contends that since appellees failed to plead or prove any such exception to immunity, the trial court erred in failing to grant judgment to the city. We disagree.

In their complaint, appellees made allegations of both common-law and statutory nuisance for the city's actions regarding the sediment flowing from Boike Park into appellees' pond. Appellees alleged that, by its placement of earth material on the park property, the city created and maintained a continuing nuisance. Appellees further alleged that the city's diversion of the water upon Boike Park from its natural course was prohibited by statute. The city's answer contained its assertion of absolute immunity pursuant to R.C. Chapter 2744.

Former R.C. 2744.02(B)(3)[2] provided an exception to immunity for a governmental function:

"Political subdivisions are liable for injury, death, or loss to persons or property caused by their failure to keep public roads, highways, streets, avenues, alleys, sidewalks, bridges, viaducts, *or public grounds* within the subdivisions open, in repair, and *free from nuisance* * * *" (Emphasis added.)

■ While the language "within the subdivisions" appears to limit this exception to areas within the geographical limits of the city, the phrase "public grounds" has been interpreted to include such areas as municipally owned and controlled parks that are established and maintained for the general public. *Cater, supra,* citing *Cleveland v. Ferrando* (1926), 114 Ohio St. 207, 150 N.E. 747. Because Boike Park was established by the city for the general public, we hold that the exception for nuisance applies in this case.

■ Under the common law, a nuisance is generally recognized as something that is either obnoxious or offensive to others. *Hacker v. Cincinnati* (1998), 130 Ohio App.3d 764, 721 N.E.2d 416, citing *Williamson v. Pavlovich* (1989), 45 Ohio St.3d 179, 543 N.E.2d 1242. A nuisance has also been defined in this manner:

"[A] distinct civil wrong arising or resulting from the invasion of a legally protected interest and consisting of an unreasonable interference with the use and enjoyment of the property of another; the doing of anything or the permitting of anything under one's control or direction to be done without just cause or excuse, the necessary consequence of which interferes with or annoys another in the enjoyment of his legal rights; the unlawful doing of anything or the permitting of anything under one's control or direction to be done, which

---

1. R.C. 2744.02 was amended effective January 27, 1997, and subsequently, on June 30, 1997.

2. The current version of R.C. 2744.02(B)(3), effective June 30, 1997, omits any reference to nuisance and no longer refers to "public grounds."

results in injury to another; or the collecting and keeping on one's premises anything inherently dangerous or likely to do mischief if it escapes, which, escaping, injures another in the enjoyment of his legal rights." *Gaines v. Wyoming* (1947), 147 Ohio St. 491, 34 O.O. 406, 72 N.E.2d 369, citing *Taylor v. Cincinnati* (1944), 143 Ohio St. 426, 28 O.O. 369, 55 N.E.2d 724.

Former R.C. 3767.01(C), effective at the time of this action, further defined a nuisance as "that which is defined and declared by statute to be such * * *."

■■■■ In this case, the trial court found the city's activities pertaining to Boike Park to be both a common-law nuisance and a statutory nuisance in violation of R.C. 3767.13.[3] Where there is competent, credible evidence to support the trial court's factual findings, the reviewing court should not disturb the judgment as against the manifest weight of the evidence. *Faber v. Queen City Terminals, Inc.* (1994), 93 Ohio App.3d 197, 201, 638 N.E.2d 115, 118. A review of the record demonstrates ample support for the trial court's factual findings. Therefore, where appellees alleged, and the trial court found, that the city's activities in Boike Park constituted a nuisance, appellees sufficiently pleaded and proved an exception to immunity for a governmental function. Thus, the city's second assignment of error is overruled.

## IV. NON-LIABILITY DEFENSES

In its third assignment of error, the city asserts that the trial court erred in failing to grant judgment for the city based on the immunity provisions of R.C. Chapter 2744. We have determined that, pursuant to statute, immunity applies to the city's activities in Boike Park, and that the city's maintenance of a nuisance on that public ground provided an exception to the city's immunity. However, the statutory scheme of R.C. Chapter 2744 sets up a third tier of analysis once an exception to immunity is found to apply. *Cater, supra,* at 27, 697 N.E.2d at 614.

We must now determine whether one of the defenses contained in R.C. 2744.03 applies to shield the city from liability. In this case, the city failed to argue any nonliability defense provision of R.C. 2744.03, even though appellees, in their complaint, had maintained that the city was liable for nuisance. We must, therefore, review the record to determine if any nonliability provision applies to the facts in this case. R.C. 2744.03(A)(5), the pertinent subsection,[4] provides:

---

3. R.C. 3767.13(C) provides: "No person shall unlawfully obstruct or impede the passage of a navigable river, harbor or collection of water, or corrupt or render unwholesome or impure, a watercourse, stream, or water, or unlawfully divert such watercourse from its natural course or state to the injury or prejudice of others."

4. Subsections (A)(1) through (A)(3) and (A)(6) deal with city employees, and therefore are not applicable here where no employee is a defendant. Subsection (A)(4) deals with acts in connection with the performance of community service.

"The political subdivision is immune from liability if the * * * loss to persons or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources, *unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner."* (Emphasis added.)

In this case, the trial court found that the city "acted with manifest arrogance, malice and bad faith. [The city] has disregarded the advice and recommendations of the County's land management professionals and the [c]ity's own engineers. [The city's] conduct has been, and continues to be, outrageous and in reckless disregard for the laws of this state." Although the city would normally be immune for losses in connection with the exercise of judgment or discretion in the use of materials and resources in Boike Park, the trial court was entitled to find that the city's judgment or discretion was exercised in bad faith. Therefore, none of the nonliability defense provisions of R.C. 2744.03 apply. The city's third assignment of error is overruled.

## V. ATTORNEY FEES AND PUNITIVE DAMAGES

The city's fourth assignment of error challenges the trial court's award to appellees of attorney fees and punitive damages. In the absence of statutory authorization, neither punitive damages nor attorney fees can be awarded against a municipal corporation. *Franklin v. Columbus* (1998), 130 Ohio App.3d 53, 719 N.E.2d 592, citing *Henry v. Akron* (1985), 27 Ohio App.3d 369, 27 OBR 465, 501 N.E.2d 659, and *Banks v. Oakwood* (Oct. 11, 1990), Cuyahoga App. Nos. 5725 and 58020, unreported, 1990 WL 151662. Because the city is a municipal corporation and no statutory authorization for punitive damages or attorney fees exists, the trial court erred. We therefore find the city's fourth assignment of error to be well taken.

## VI. TRIAL PROCEDURE

The city asserts that the trial court erred by conducting a separate "damages hearing" after the trial on liability. This assignment has no merit because the latter hearing was merely a continuation of the trial in progress. Moreover, the determination to conduct separate hearings on the issues of liability and damages, pursuant to Civ.R. 42(B), is committed to the sound discretion of the trial court. *Heidbreder v. Northampton Twp. Trustees* (1979), 64 Ohio App.2d 95, 18 O.O.3d 78, 411 N.E.2d 825. Although the trial court's holding separate hearings in this case is somewhat out of the ordinary, we find no abuse of discretion. Furthermore, the city has failed to demonstrate prejudice resulting from the trial court's action because the city had the opportunity to

present evidence and cross-examine appellees' witnesses. Therefore, the city's fifth assignment of error is overruled.

## VII. CONCLUSION

Based upon the foregoing, we hold that the city's acts or decisions relating to, or occurring on, its extraterritorial parks are entitled to the same immunity protection as those occurring within the city's borders. However, because we conclude that appellees proved an exception to the city's immunity, and that no nonliability defense applies, we affirm the trial court's award of compensatory damages. We reverse the award of punitive damages and attorney fees. We remand this case to the trial court for a judgment entry setting forth the award of compensatory damages.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

HILDEBRANDT, P.J., and SHANNON, J., concur.

RAYMOND E. SHANNON, J., retired, of the First Appellate District, sitting by assignment.