The STATE ex rel. SCHOENER et al., Appellants and Cross–Appellees,

v.

BOARD OF COUNTY COMMISSIONERS OF HAMILTON COUNTY, OHIO, Appellee, et al.; Rumpke Sanitary Landfill, Inc., Appellee and Cross–Appellant; Chabot et al.█

[Cite as *State ex rel. Schoener v. Hamilton Cty. Bd. of Commrs.* (1992), 84 Ohio App.3d 794.]

Court of Appeals of Ohio,
Hamilton County.

Nos. C–900757, C–900778, C–900817 and C–900924.

Decided Dec. 30, 1992.

*Timothy L. Bouscaren,* for appellants and cross-appellees.

*Arthur M. Ney, Jr.,* Hamilton County Prosecuting Attorney, and *Roger E. Friedmann,* Assistant Prosecuting Attorney, for appellee Board of County Commissioners of Hamilton County, Ohio.

*Keating, Muething & Klekamp, Louis F. Gilligan, Robert A. Klingler* and *W. Keith Noel,* for appellee and cross-appellant Rumpke Sanitary Landfill, Inc.

UTZ, Judge.

This is an appeal and cross-appeal in a complex lawsuit in which Hamilton County landowners [1] sought to recover damages from Rumpke Sanitary Landfill, Inc., the Board of County Commissioners of Hamilton County, Ohio, and others related to the operation of a landfill near their property. The jury which heard

---

1. Daniel Schoener, Leroy and Esther Perfect, Joseph D. Atherton, Berle Bernat, Raymond and Janice Chutter, Randall and Evangeline Durbin, George and Patricia Engel, Douglas K. and Jennifer Fread, Jack and Faye Hardert, Chester and Thelma Arnold, John L. and Carol L. Hauser, Dale Keiger and Marian Grant, Robert G. and Joyce Laughlin, Joseph and Melody Sonnenberg, A. Neil and Tildy Stubbers, William and Jewell Carrier, Kary and Bonnie Kleeman, Phyllis Rabe, Walter J.B. Robison, Harlan and Susan Stauffer, Barry and Pamela Wakeman, Kresso Mikulic, Anna Ritter, William and Lois Margrave, and Colerain Citizens Against Pollution.

 Robert G. and Joyce Laughlin, and A. Neil and Tildy Stubbers were named in the notices of appeal filed on behalf of the plaintiffs in this case. However, they were not included as plaintiffs in the fourth amended complaint and have not been listed by the appellants in their brief submitted to this court.

most of the case returned a verdict for defendants. The trial court, however, decided in favor of plaintiffs on the one count contained in their complaint that was submitted to the court for decision and awarded them some attorney fees and costs. The court further awarded Rumpke Sanitary Landfill certain costs.

## I

This lawsuit began on November 4, 1987, when landowners living near the landfill operated by Rumpke Sanitary Landfill in Colerain Township filed a complaint against Hamilton County and various Hamilton County officials. Plaintiffs sought to act as representatives of a class of persons and entities who resided near or owned or leased property near the landfill. They claimed that the county and its officials had failed to enforce the Hamilton County Zoning Resolution with respect to the landfill since the resolution had become applicable in Colerain Township in 1961, resulting in damage to plaintiffs. Plaintiffs sought a writ of mandamus directing the county and its officials to enforce the zoning resolution, along with damages, both compensatory and punitive, of $80,000,000, and fees and costs.

Rumpke Sanitary Landfill was permitted to intervene in the lawsuit and the court bifurcated the mandamus count in the complaint from the damages count. A hearing was conducted before the court in the mandamus action, after which the court denied the writ of mandamus. The court concluded "that the Relators have failed to demonstrate that they have a clear legal right to the relief requested by enforcement of the zoning code and the Relators have failed to show that the Respondents are under a clear legal duty to perform any acts with respect to the Hamilton County Zoning Code." An appeal and cross-appeal from this judgment were dismissed by this court based on our conclusion that the judgment was not a final, appealable order.

A long period of discovery then ensued in the case. During that time, the trial court denied plaintiffs' motion for class certification, and overruled motions for summary judgment submitted by both Rumpke Sanitary Landfill and the county defendants.

A jury was empaneled and a trial began with respect to plaintiffs' claims for damages on April 23, 1990. During the course of the trial, the trial court granted plaintiffs' motion to add three new defendants: Rumpke Waste, Inc., Rumpke Container Service and Rumpke Consolidated Companies, Inc.

Also during the trial, plaintiffs filed their fourth amended complaint, upon which the trial proceeded. The twelve-count complaint named the following as defendants: Board of County Commissioners of Hamilton County, Ohio; Steven J. Chabot, Sandra S. Beckwith, and Robert A. Taft, County Commissioners;

Department of the Building Commissioner of Hamilton County; Ralph W. Liebing, Building Commissioner; Rumpke Sanitary Landfill, Inc.; Rumpke Waste, Inc.; Rumpke Container Service; and Rumpke Consolidated Companies, Inc. Plaintiffs sought to hold defendants jointly and severally liable for $60,000,000 in compensatory and punitive damages along with various fees and costs. Plaintiffs asserted theories of nuisance, strict liability in tort, negligence, and violation of the Ohio Solid and Hazardous Waste Disposal Act, R.C. Chapter 3734, against the Rumpke defendants. The theories asserted against the Hamilton County defendants were nuisance, failure to enforce the Hamilton County Zoning Resolution, failure to abate and control a nuisance, negligence, intentional and negligent infliction of emotional distress, inverse condemnation, and violation of Section 1983, Title 42, U.S.Code. At the end of defendants' evidence, the court denied plaintiffs' motion for a directed verdict.

Plaintiffs' claims for damages were submitted to the jury for determination. Their claim that the Rumpke defendants violated R.C. Chapter 3734 was submitted to the court for decision.

On June 11, 1990, the thirty-fourth day of the trial, the jury returned verdicts in favor of the defendants on all counts. By agreement of counsel, plaintiffs dismissed with prejudice their claims against Rumpke Waste, Inc., Rumpke Container Service, Rumpke Consolidated Companies, Inc., Sandra S. Beckwith, Robert A. Taft, Steven J. Chabot, Department of the Building Commissioner, and Ralph W. Liebing. On July 2, 1990, the court entered judgment for defendants Board of County Commissioners of Hamilton County, Ohio, and Rumpke Sanitary Landfill, Inc. (hereinafter "Rumpke") on the claims submitted to the jury.

On September 14, 1990, the trial court filed its judgment entry regarding plaintiffs' claims under the Ohio Solid and Hazardous Waste Disposal Act, codified at R.C. 3734.01 *et seq.*, that were submitted to the court for decision. The court concluded that plaintiffs had proved that Rumpke had violated this law and awarded plaintiffs $5,000 of costs incurred to prepare graphs, maps, and diagrams used to prove their case, $7,000 in expert witness fees, and attorney fees of $164,090.65. From this entry, Rumpke has filed a timely notice of appeal (case No. C–900757) and plaintiffs have filed a notice of cross-appeal (case No. C–900778). In their brief on appeal, plaintiffs have indicated their intent not to pursue their cross-appeal.

On October 15, 1990, the court denied plaintiffs' motion for judgment notwithstanding the verdict, or in the alternative, for a new trial. From this entry, plaintiffs have filed a timely notice of appeal (case No. C–900817).

On November 27, 1990, the court awarded costs totaling $48,593.04 to Rumpke. Plaintiffs have filed a timely notice of appeal from this entry (case No. C–900924).

On appeal to this court, plaintiffs advance five assignments of error and Rumpke advances one. We shall now turn to the assignments of error, considering them in a different order from that in which they have been presented to us.

## II

We turn first to plaintiffs' third assignment of error, in which they argue that the trial court committed prejudicial error when it denied their request to instruct the jury on the law of absolute nuisance. With respect to jury instructions, the Ohio Supreme Court has held that:

" 'Ordinarily requested instructions should be given if they are correct statements of the law applicable to the facts in the case and reasonable minds might reach the conclusion sought by the instruction.' " *Murphy v. Carrollton Mfg. Co.* (1991), 61 Ohio St.3d 585, 591, 575 N.E.2d 828, 832 (quoting Markus & Palmer, Trial Handbook for Ohio Lawyers [3 Ed.1991] 860, Section 36:2).

Because we conclude that the law of absolute nuisance is not applicable under the circumstances of this case, we overrule this assignment of error.

Under Ohio law, a "nuisance" is "a distinct civil wrong, consisting of anything wrongfully done or permitted which interferes with or annoys another in the enjoyment of his legal rights." (Citation omitted.) *Taylor v. Cincinnati* (1944), 143 Ohio St. 426, 436, 28 O.O. 369, 373, 55 N.E.2d 724, 729. In *Taylor*, the Ohio Supreme Court determined that a nuisance can be classified as either absolute or qualified, depending on the circumstances. Strict liability is imposed when an absolute nuisance is found to exist, but negligence must be proved to establish a qualified nuisance. *Id.*, paragraphs two and three of the syllabus. In *Metzger v. Pennsylvania, Ohio & Detroit RR. Co.* (1946), 146 Ohio St. 406, 32 O.O. 450, 66 N.E.2d 203, paragraphs one and two of the syllabus, the Ohio Supreme Court explained the distinction between an absolute and a qualified nuisance in this manner:

"1. An absolute nuisance, or nuisance per se, consists of either a culpable and intentional act resulting in harm, or an act involving culpable and unlawful conduct causing unintentional harm, or a nonculpable act resulting in accidental harm, for which, because of the hazards involved, absolute liability attaches notwithstanding the absence of fault.

"2. A qualified nuisance, or nuisance dependent on negligence, consists of an act lawfully but so negligently or carelessly done as to create a potential and unreasonable risk of harm, which in due course results in injury to another. *Taylor v. City of Cincinnati*, 143 Ohio St. 426, [28 O.O. 369] 55 N.E.2d 724, 155 A.L.R. 44, approved and followed." See, also, *Jennings Buick, Inc. v. Cincinnati* (1978), 56 Ohio St.2d 459, 10 O.O.3d 545, 384 N.E.2d 303, and *Interstate Sash &*

*Door Co. v. Cleveland* (1947), 148 Ohio St. 325, 35 O.O. 314, 74 N.E.2d 239, both of which also discuss the distinction between absolute and qualified nuisances.

Relying on these and other cases, plaintiffs in the present case argue, as they did to the trial court, that they have presented sufficient evidence from which the jury could have found that Rumpke maintained an absolute nuisance, thus entitling them to a jury instruction on the law of absolute nuisance. They claim that they established the existence of an absolute nuisance by presenting evidence that they suffered harm because of Rumpke's culpable and intentional acts, the company's culpable and unlawful conduct,[2] and its hazardous conduct. We agree with the trial court's conclusion that under the circumstances of this case, the only theory of nuisance applicable is that of qualified nuisance.

Rumpke Sanitary Landfill, like other solid waste disposal facilities located in Ohio, is heavily regulated. Rumpke is licensed pursuant to the Ohio Solid and Hazardous Waste Disposal Act, R.C. Chapter 3734. In accordance with the statute, the facility has met certain licensing parameters and is subject to many regulations. The facility is further subject to numerous inspections conducted by agents of both Hamilton County and the Ohio Environmental Protection Agency. We have found no cases in which the Ohio Supreme Court has held that such a facility can be subject to liability as an absolute nuisance. In the absence of such authority, we hold that in order for a duly licensed and regulated sanitary landfill to be found liable for maintaining a nuisance, negligence must be established. A standard of strict liability is not appropriate under these circumstances, where the public policy of Ohio has clearly chosen to allow operators such as Rumpke to do business in this state subject to the limitations imposed under what can only be termed a comprehensive and vigilant regulatory scheme. Once an operator becomes licensed by the state, we think it fair to say in law that part of the *quid pro quo* for the submission to such exacting regulatory oversight is the operator's insulation from liability under a theory of strict liability. Therefore, we conclude that the trial court did not err when it declined to instruct the jury concerning absolute nuisance.

## III

In their first assignment of error, plaintiffs contend that the trial court prejudicially erred when it overruled their motion for a directed verdict made at the close of Rumpke's case and their motion for judgment notwithstanding the

---

2. Plaintiffs contend that Rumpke violated a consent judgment; the Ohio Solid and Hazardous Waste Disposal Act, R.C. Chapter 3734, and related sections of the Ohio Administrative Code; and the Hamilton County Zoning Resolution and related resolutions of the county commissioners.

verdict. They argue that they are entitled to a judgment in their favor under theories of absolute nuisance and negligence *per se*. We are not persuaded.

In *Posin v. A.B.C. Motor Court Hotel, Inc.* (1976), 45 Ohio St.2d 271, 275, 74 O.O.2d 427, 430, 344 N.E.2d 334, 338, the Ohio Supreme Court stated:

"The test to be applied by a trial court in ruling on a motion for judgment notwithstanding the verdict is the same test to be applied on a motion for a directed verdict. The evidence adduced at trial and the facts established by admissions in the pleadings and in the record must be construed most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied. Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination in ruling upon either of the above motions." (Citations omitted.)

Applying this standard to the case at bar, we cannot say that the trial court erred when it denied plaintiffs' motions for a directed verdict and for judgment notwithstanding the verdict. We have already decided that the law of absolute nuisance is not applicable under these circumstances. We further conclude that the trial court did not err when it denied these motions with respect to the doctrine of negligence *per se.*

■ In order to prevail under a theory of negligence *per se*, it must be shown that injury was proximately caused by the violation of a safety statute. *State Farm Ins. Co. v. Wood* (1989), 58 Ohio App.3d 11, 12–13, 567 N.E.2d 1040, 1041–1042. Plaintiffs argue that they established at trial that Rumpke violated the Ohio Solid and Hazardous Waste Disposal Act, R.C. Chapter 3734, and related provisions of the Ohio Administrative Code, and the Hamilton County Zoning Resolution and related resolutions of the Board of County Commissioners. They claim that each of these laws gives rise to a statutorily created duty of care and that Rumpke's violation of these duties renders them liable for resulting harm under the doctrine of negligence *per se.*

From our review of the trial record, we conclude that Rumpke produced substantial evidence from which the jury could have reasonably concluded that Rumpke substantially complied with the laws in question. Further, the jury could have reasonably concluded that plaintiffs were not harmed by individual violations of the laws, including the various violations of the Ohio Administrative Code noted on inspection reports by state and local inspectors of the landfill.[3]

---

3. For this analysis, we assume, without deciding, that the statute, administrative regulations, and county resolutions at issue here give rise to a statutorily created standard of conduct that can be the basis for liability under the theory of negligence *per se*. See, *e.g., Eisenhuth v. Moneyhon* (1954), 161 Ohio St. 367, 53 O.O. 274, 119 N.E.2d 440 (discussing the analysis used

## IV

 In their second assignment of error, plaintiffs argue that the trial court erred to their prejudice when it overruled their motion for judgment notwithstanding the verdict with respect to defendant-appellee, the Board of County Commissioners of Hamilton County. During oral argument before this court, plaintiffs presented an oral motion in which they requested that we sustain this assignment of error because the board of commissioners failed to file an appellee's brief.

App.R. 18(c) discusses the consequences of the failure of an appellee to file a brief:

" * * * If an appellee fails to file his brief within the time provided by this rule, or within the time as extended, he will not be heard at oral argument except by permission of the court upon a showing of good cause submitted in writing prior to argument; and in determining the appeal, the court may accept the appellant's statement of the facts and issues as correct and reverse the judgment if appellant's brief reasonably appears to sustain such action."

Although the rule gives this court the discretion to sustain an assignment of error when the appellee fails to file a brief, we decline to do so in this case because plaintiffs' brief has failed to convince us that the trial court erred in the manner assigned by them.

 Plaintiffs argue that the board of commissioners undertook a duty to plaintiffs to alleviate the nuisance they allege was created by Rumpke. Because the board of commissioners failed to alleviate the alleged nuisance, they claim the county is jointly and severally liable for the damages arising therefrom. They further argue that the county's actions resulted in a taking of property rights without just compensation, and, therefore, the county must compensate them for this inverse condemnation. From the cases upon which plaintiffs rely in support of their inverse-condemnation argument, it is apparent that their claim rests on the constitutions of both the United States and the state of Ohio.

Construing the evidence produced at trial most strongly in favor of the board of commissioners, we conclude that the trial court did not err when it denied plaintiffs' motion for judgment notwithstanding the verdict because substantial evidence exists from which the jury could, as it did, reach a verdict in favor of the board of commissioners.[4] The assignment of error is overruled.

---

to determine whether the violation of legislative enactments may constitute actionable negligence).

4. For this analysis, we assume, without deciding, that the county could be held jointly and severally liable for damages caused by a nuisance, had one been proven, and that an action for

## V

In their fourth assignment of error, plaintiffs contend that the trial court erred to their prejudice when it denied their motion for a new trial. They argue that the jury's verdict in favor of defendants is not supported by sufficient evidence, and, therefore, they are entitled to a new trial. After reviewing the evidence presented at trial, we conclude that the jury's verdict is supported by competent, credible evidence going to all the essential elements of the case and we decline to reverse the judgment for defendants and order a new trial. See *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578 (discussing the standard for determining whether a judgment is against the manifest weight of the evidence).

## VI

In their fifth assignment of error, plaintiffs challenge the trial court's award to Rumpke of $48,593.04 in costs. This cost award is composed of the following three categories of expenses, which we shall address separately below: $41,131 for the fees of various expert witnesses employed by Rumpke; $7,447.29 for the cost of Rumpke's exhibits; and $14.75 for an unidentified document described by the trial court as the "Bouscaren statement."

Under Civ.R. 54(D), a trial court is given the discretion to award to a prevailing party the costs of litigation when there is no applicable statutory provision. See *Baby Tenda v. Jessup* (Mar. 16, 1988), Hamilton App. Nos. C–870158 and C–870397, unreported, 1988 WL 32092. In ruling upon a motion to tax an expense as a cost, the trial court must determine (1) whether the item is a litigating expense or a personal expense, and (2) whether the litigating expense was necessary and vital to the litigation and therefore should be taxed in the case at bar. *Id.* at 9 (citing *Jones v. Pierson* [1981], 2 Ohio App.3d 447, 2 OBR 542, 442 N.E.2d 791).

However, Ohio courts diverge from this discretionary standard with respect to expert witness fees. The Ohio Supreme Court has stated that "without statutory provision, a trial court should not tax an expert's witness fee as costs." *Moore v. Gen. Motors Corp., Terex Div.* (1985), 18 Ohio St.3d 259, 260, 18 OBR 314, 315, 480 N.E.2d 1101, 1102; see, also, *In re Election of November 6, 1990 for the Office of Attorney General of Ohio* (1991), 62 Ohio St.3d 1, 4–5, 577 N.E.2d 343, 346 (in the absence of specific statutory authorization, expert witness fees not taxable as costs in election contest). In addition, the overwhelming majority of

---

inverse condemnation could lie under the circumstances of this case. We further assume, without deciding, that the county is not protected in this suit by any theory of sovereign immunity.

Ohio appellate courts addressing the issue hold simply that expert witness fees are not taxable as costs. See, *e.g., Gold v. Orr Felt Co.* (1985), 21 Ohio App.3d 214, 21 OBR 228, 487 N.E.2d 347; accord *Shipman v. Alamo Rent–A–Car, Inc.* (1990), 70 Ohio App.3d 333, 590 N.E.2d 1385; *Rosenbaum v. Voorhees* (May 18, 1990), Geauga App. No. 89–G–1522, unreported, 1990 WL 67763. We therefore determine that the trial court erred by awarding the $41,131 in expert witness fees to Rumpke.

We next address the trial court's award of $7,447.29 for the cost of exhibits used by Rumpke during trial. The court found, pursuant to *Baby Tenda, supra,* that these exhibit fees were necessary and vital litigation expenses. We conclude that the trial court did not abuse its discretion in making this finding, and we therefore sustain the award of $7,447.29 for Rumpke's exhibit fees.

Similarly, we find no abuse of discretion in the award of $14.75 for a document described as the "Bouscaren Statement." The trial court stated in its memorandum of decision that Mr. Bouscaren did not dispute this award, and it has not been challenged on appeal. Therefore, presuming regularity in the trial court's proceedings on this matter, we affirm the award of $14.75 to Rumpke.

## VII

In its cross-appeal, Rumpke alleges as its single assignment of error that the trial court erred by entering judgment in favor of plaintiffs for attorney fees and expenses pursuant to R.C. 3734.101. We find merit in this assignment of error.

As we noted above, plaintiffs' claim that Rumpke violated R.C. Chapter 3734, Ohio's Solid and Hazardous Waste Disposal Act, was submitted to the trial court for decision. The court made a finding in favor of plaintiffs and, without any accompanying order for substantive relief, awarded plaintiffs $164,090.65 for attorney fees, $5,000 for exhibit costs and $7,000 for expert witness fees.

R.C. 3734.101(E) provides in pertinent part:

"(E) Only the court of common pleas in the county in which an alleged violation occurs has original jurisdiction over actions authorized by division (A) of this section. The court may:

"(1) Compel the alleged violator to comply with the particular provision of this chapter, rule, permit, license, variance, or order in question; and

"(2) Award, as the court considers appropriate, costs of litigation, including reasonable attorney's fees and expert witness fees, to:

"(a) A plaintiff who substantially prevails in the action * * *."

All aspects of the award to plaintiffs in this case are governed by this statute,[5] which permits costs to be awarded to a plaintiff who "substantially prevails" in the action. We cannot say that plaintiffs substantially prevailed in the R.C. Chapter 3734 action, because while the trial court made a finding that R.C. Chapter 3734 had been violated, it did not "compel the alleged violator to comply with" the statute. An order compelling compliance is the only form of relief contemplated by R.C. 3734.101 in actions brought pursuant to its terms; here, plaintiffs did not seek such relief, and no order of compliance or any other substantive relief accompanied the trial court's finding. Therefore, we conclude that the trial court erred by awarding attorney fees, exhibit costs and expert witness fees to plaintiffs in their R.C. Chapter 3734 claim. The single assignment of error under Rumpke's cross-appeal is sustained.

## VIII

In sum, plaintiffs' assignments of error one through four are overruled, and the judgment in case No. C–900817 is affirmed. Plaintiffs' fifth assignment of error is sustained in part and overruled in part; the judgment in case No. C–900924 is affirmed insofar as it awards $7,462.04 to Rumpke for exhibit costs ($7,447.29) and the "Bouscaren statement" ($14.75), and is reversed with respect to the $41,131 award of expert witness fees, and we hereby enter final judgment in case No. C–900924 in accordance with these terms. The single assignment of error in Rumpke's cross-appeal, case No. C–900757, is sustained, the judgment awarding $176,090.65 to plaintiffs is reversed, and final judgment is hereby entered in favor of Rumpke in this appeal. Finally, case No. C–900778 has not been pursued by plaintiffs and is, therefore, dismissed.

*Judgment accordingly.*

KLUSMEIER, P.J., and HILDEBRANDT, J., concur.

---

5. As we stated above, Civ.R. 54(D) does not by its terms apply when provision for costs is made in a statute.