**BAYS et al.**

v.

**KENT STATE UNIVERSITY.**

Court of Claims of Ohio.

No. 95–10629.

Decided April 16, 1997.

John C. Pierson, for plaintiffs.

Betty D. Montgomery, Attorney General, and J. David Goodman, Assistant Attorney General, for defendant.

STRAUSBAUGH, Judge.

Plaintiffs, Leo and Willa Bays, filed this action against defendant, Kent State University ("KSU"). The court held a trial upon the sole issue of liability. Upon review of the evidence, the arguments of counsel, and the law, the court renders the following findings of fact and conclusions of law.

### FINDINGS OF FACT

1. Plaintiffs, Leo and Willa Bays, are husband and wife;

2. On September 7, 1971, Maude J. Hause conveyed 14.34 acres of real property situated in the village of Munroe Falls in Summit County, Ohio, to Willa Bays for $10 in consideration. Mrs. Bays has continuously owned this property, which is the subject of this litigation, through to the present time;

3. Mr. and Mrs. Bays live on land located adjacent to this property;

4. Soon after purchasing the property, Mrs. Bays cleared out some brush and other natural debris and noticed an ankle-deep creek or stream that ran through her land. Oftentimes, the stream was completely dry and only flowed with water during and after rain storms;

5. The stream was located well north of Mrs. Bays's property and ran in a southerly direction through KSU's airport, which is contiguous to the north side of Mrs. Bays's property. It continued through Mrs. Bays's land, and remained small and shallow until 1991;

6. In August 1991, the city of Munroe Falls began trenching the existing stream with bulldozers and backhoes, starting from a subdivision of homes known as Charring Cross Meadows that is located upstream and north of the KSU airport. The trenching continued through the KSU airport land and then ceased abruptly at the edge of Mrs. Bays's property line;

7. Whereupon in August 1991, Mrs. Bays contacted Eugene J. Ripple, Ph.D., Ed.D., and former director of the KSU airport. Mrs. Bays asked Dr. Ripple what KSU was doing on its land near her property. He investigated Mrs. Bays's concerns and discovered a large ditch that had been trenched through what had otherwise been a small creek on the KSU property. He further noticed that the new ditch did not follow the exact course of the original creek and tended to widen and straighten out the creek;

8. No one at KSU had any knowledge of the trenching work on the stream performed by the city of Munroe Falls until Mrs. Bays's telephone call to Dr. Ripple. After becoming aware of the situation, James R. Watson, KSU Assistant Director of Legal Affairs, wrote to Mrs. Bays and requested that she direct her concerns to the city of Munroe Falls;

9. The new, wider and deeper waterway that ran through the KSU airport effectively drained what was once described as a wetland, or an area of land that remained wet to some extent throughout the entire year, and that was located on the KSU airport property;

10. Mrs. Bays described how the new, wider and deeper waterway had changed the situation on her property as follows:

"Massively. It is scouring the banks, it has removed our fence and flattened it down flat, and took the wall askew in the ditch, and the tree roots are hanging out, and the banks are falling in, and the bridge posts are all exposed, and it washed out the culvert and shot it out under the fence and down onto the next property south of our property."

11. She further testified that with almost every storm event, "[t]here is all manner and sorts of debris, bicycles, [and] big pieces of plastic [that come onto her property from upstream].";

12. On August 26, 1994, Mrs. Bays wrote to Lowell Crosky of KSU and requested that KSU work in conjunction with the city of Munroe Falls to build a holding pond on KSU's airport property to help prevent further erosion and flooding on their property. No one from KSU responded to this letter;

13. At one point in time, when an old water retaining wall had washed out during a storm, Mrs. Bays requested the city of Munroe Falls to build a new retaining wall along the bank of the waterway. The city of Munroe Falls complied with this request;

14. In November 1995, Mr. and Mrs. Bays entered into a settlement agreement with the city of Munroe Falls for an accident that occurred on or about June 1, 1992. The accident referred to in the agreement occurred when a storm washed out a culvert that the Bayses had used as a "bridge" to cross the waterway. The Bayses received $2,000 from the city of Munroe Falls as a settlement for the damage to this bridge;

15. Plaintiffs maintain that KSU is responsible for damages to their land under theories of negligence and nuisance;

16. Defendant argues that plaintiffs have failed to state a claim upon which relief can be granted and, at the completion of plaintiffs' case-in-chief, moved for a dismissal pursuant to Civ.R. 41. The court reserved ruling on defendant's motion and instructed defendant to go forward with its defense. Defendant then posited that no act or omission on the part of KSU caused any of plaintiffs' claimed damages.

## CONCLUSIONS OF LAW

1. "[C]ivil actions against the state permitted by sections 2743.01 to 2743.20 of the Revised Code shall be commenced no later than two years after the date of accrual of the cause of action or within any shorter period that is applicable to similar suits between private parties." R.C. 2743.16(A);

2. In *Brown v. S. Ohio Corr. Facility* (1991), 62 Ohio Misc.2d 337, 341, 598 N.E.2d 909, 911, this court discussed the application of R.C. 2743.16(A) to continuous nuisance cases as follows:

" * * * There is authority for the proposition that, ordinarily, a statute of limitations does not run against a nuisance that is continuous, or when a nuisance had gradually become worse with the passing of time. This is based upon the theory that every continuation of a nuisance constitutes a new nuisance. See, *e.g.*, 72 Ohio Jurisprudence 3d (1987), Nuisances, Section 26, at 412–414, and those inapposite cases cited in footnotes 10 through 18.

"However, the law on this particular issue is plain and is set forth in R.C. 2743.16(A), as follows: 'Subject to division (B) of this section, *civil actions against the state permitted by sections 2743.01 to 2743.20 of the Revised Code* shall be commenced no later than two years after the date of accrual of the cause of action * * *.' (Emphasis added.) Without doubt, the present action is maintainable, if at all, only within the strictures of R.C. 2743.01 through 2743.20. Consequently, the two-year statute of limitations set forth must apply to plaintiff's nuisance claims as well."

■■■■ 3. Nuisance is "a distinct civil wrong, consisting of anything wrongfully done or permitted which interferes with or annoys another in the enjoyment of his legal rights." *Taylor v. Cincinnati* (1944), 143 Ohio St. 426, 436, 28 O.O. 369, 373, 55 N.E.2d 724, 729. Under Ohio law, a nuisance has been classified as one of the following: (1) an absolute nuisance, which imposes strict liability, or (2) a qualified nuisance, which depends on proof of negligence. *Id.* at paragraphs two and three of the syllabus;

■■■■ 4. The Supreme Court of Ohio defined the difference between an absolute nuisance and a qualified nuisance in *Metzger v. Pennsylvania, Ohio & Detroit RR. Co.* (1946), 146 Ohio St. 406, 32 O.O. 450, 66 N.E.2d 203, paragraphs one and two of the syllabus:

"1. An absolute nuisance, or nuisance *per se*, consists of either a culpable and intentional act resulting in harm, or an act involving culpable and unlawful conduct causing unintentional harm, or a nonculpable act resulting in accidental harm, for which, because of the hazards involved, absolute liability attaches notwithstanding the absence of fault.

"2. A qualified nuisance, or nuisance dependent on negligence, consists of an act lawfully but so negligently or carelessly done as to create a potential and unreasonable risk of harm which in due course results in injury to another. [*Taylor v. Cincinnati* (1944), 143 Ohio St. 426, 28 O.O. 369, 55 N.E.2d 724, approved and followed.]" See, also, *State ex rel. Schoener v. Hamilton Cty. Bd. of Commrs.* (1992), 84 Ohio App.3d 794, 619 N.E.2d 2;

74

**■** 5. In resolving surface water disputes, courts of this state apply a reasonable-use rule under which a possessor of land is not unqualifiedly privileged to deal with surface water as he pleases, nor absolutely prohibited from interfering with the natural flow of surface waters to the detriment of others. Each possessor is legally privileged to make reasonable use of his land, even though the flow of surface waters is altered thereby and causes some harm to others, and the possessor incurs liability only when his harmful interference with the flow of surface water is unreasonable. *McGlashan v. Spade Rockledge Terrace Condo Dev. Corp.* (1980), 62 Ohio St.2d 55, 16 O.O.3d 41, 402 N.E.2d 1196, syllabus;

**■** 6. Since plaintiffs did not file their claim until October 16, 1995, the court shall only consider those portions of their claim that can be attributed to acts or omissions on the part of defendant that occurred from October 16, 1993 to the present. Accordingly, defendant's motion for dismissal pursuant to Civ.R. 41 is granted, in part, to the extent that claims predicated upon defendant's alleged acts or omissions prior to October 16, 1993 are barred by R.C. 2743.16(A);

**■** 7. Applying the relevant precedent to the remainder of the case *sub judice,* the court concludes that KSU has no duty to plaintiffs other than to refrain from exposing them to unreasonable risks of harm. From October 16, 1993 to the present, KSU has not committed any affirmative acts that have contributed to any of the alleged "damages" plaintiffs maintain occur with "almost every storm event." Furthermore, from the time KSU first became aware of plaintiffs' concerns, its officials have offered to "cooperate to the extent possible with whatever resolution [plaintiffs] and the City [were] able to reach." This court is of the opinion that KSU's position in regard to plaintiffs' concerns from the time period of October 16, 1993 to the present has been and is reasonable under a totality of the circumstances involved. Consequently, judgment shall be rendered in favor of defendant.

*Judgment for defendant.*

DEAN STRAUSBAUGH, J., retired, of the Tenth Appellate District, sitting by assignment.