On April 29, 1997, Lavetta Stewart and Constance K. McCue filed a complaint against Dean L. and Diana J. Seedorff, Richard W. and Mary Louise Zollinger, Richard W. Zollinger, trustee of the Mary Louise Zollinger trust, and Windrush Creek Property Owner's Association, Inc. ("association") setting forth various claims for relief including violations of certain restrictive covenants, trespass and nuisance.
By way of background, Ms. Stewart, Ms. McCue, the Seedorffs and the Zollingers had at one point all lived in a housing development in Blacklick, Ohio, known as Windrush Creek. The properties owned by the Seedorffs and the Zollingers abut a pond. Ms. Stewart's property is bordered on the right, as one faces the pond, by lot No. 7 which, at the time of the complaint, was owned by the Seedorffs. To the left of Ms. Stewart's property is Ms. McCue's property, lot No. 9. Ms. McCue's lot is bordered by lot No. 14, which is owned by the Zollingers. Neither Ms. Stewart's nor Ms. McCue's property border the pond.
The Seedorffs purchased their property in 1984 from Jerry Miras, the original owner. Mr. Miras had planted numerous trees on the property in 1977. The Zollingers purchased their property in 1986. Prior owners had planted eighteen trees on the property in 1979. All the trees at issue ran along the borders between the Seedorffs' and Ms. Stewart's properties and between Ms. McCue's and the Zollingers' properties.
In their complaint, Ms. Stewart and Ms. McCue averred that the Seedorffs, in violation of certain covenants and restrictions, had maintained a "line of trees and shrubs" two feet from their lot lines and that such created an impassable barrier to common properties and completely blocked their view of the pond. Ms. Stewart and Ms. McCue also averred the trees constituted a private nuisance and encroached upon their properties resulting in trespass. As to the association, Ms. Stewart and Ms. McCue averred it failed and refused to enforce certain covenants and restrictions placed upon the properties.
Ms. Stewart and Ms. McCue requested relief in the form of damages and injunctive relief by way of an order that the trees be removed and that the defendants be permanently enjoined from planting other trees in violation of the restrictions and covenants.
All parties filed motions for summary judgment. On July 17, 1998, the trial court journalized a decision and entry, denying Ms. Stewart and Ms. McCue's motion for summary judgment and granting summary judgment in favor of the Seedorffs, the Zollingers and the association (hereinafter collectively referred to as "appellees"). Ms. Stewart (hereinafter "appellant") has appealed to this court, assigning the following errors for our consideration:[1]
 1. The trial court erred by ruling that Plaintiff failed to create a triable issue of fact regarding whether Defendants-Appellees Dean and Diana Seedorff ("Seedorffs") and Defendants-Appellees Richard and Mary Louise Zollinger ("Zollingers") are inflicting a private nuisance upon her.
 2. The trial court erred by ruling that Plaintiff failed to create a triable issue of fact regarding whether the Zollingers and Seedorffs are violating restrictive covenants barring "noxious or offensive activity" and activity "tending to cause embarrassment, discomfort, annoyance or nuisance."
 3. The trial court erred by ruling that Plaintiff failed to create a triable issue of fact regarding whether the Zollingers and Seedorffs are violating Plaintiff's rights under the "easement of enjoyment over and across areas of Scenic Preserve," granted by a recorded restrictive expressly for the benefit of all residents of Windrush Creek.
 4. The trial court erred by ruling that Plaintiff failed to create a triable issue of fact regarding whether the Zollingers and Seedorffs are violating the "Architectural Control" provision in the parties' restrictive covenant, which requires prior approval of both landscaping and erection of walls or fences.
 5. The trial court erred by ruling that Plaintiff failed to create a triable issue of fact regarding whether Defendant-Appellee Windrush Creek Property Owners Association, Inc. ("Association") has acted unreasonably or violated its duties by failing to enforce the "Architectural Control" provision.
 6. The trial court erred by refusing to consider, as it relates to the viability of Plaintiff's claims, the uncontradicted deposition testimony of Edson Linnabary and Don McCue, who provided highly relevant evidence about the design and intent of Windrush Creek, the residential development in which Plaintiff lives.
 7. The trial court erred by failing to enter judgment in favor of plaintiff on her trespass claim against the Seedorffs, and by instead granting summary judgment in favor of the Seedorffs on this claim, despite the Seedorffs' explicit admissions that they are committing trespass upon Plaintiff's property.
 8. The trial court erred by requiring Plaintiff to respond to Defendants' summary judgment motions without first compelling Defendants to comply with Plaintiff's discovery requests.
We address appellant's eighth assignment of error first. Appellant contends the trial court erred in not granting her motion for a continuance pursuant to Civ.R. 56(F) so that she could obtain additional discovery before responding to appellees' motions for summary judgment. Appellant also contends the trial court erred in denying her motion to compel discovery. Appellant asserts the trial court should have granted her motions because the Zollingers and the Seedorffs attached affidavits to their motions for summary judgment after having not given deposition testimony. Specifically, the Zollingers obtained a protective order precluding the taking of their depositions, and Mr. Seedorff twice failed to appear at noticed depositions.
As a general matter, the standard of review in discovery matters is abuse of discretion. Mauzy v. Kelly Services, Inc.
(1996), 75 Ohio St.3d 578, 592. As to appellant's motion for a continuance, Civ.R. 56(F) applies and states:
 Should it appear from the affidavits of a party opposing the motion for summary judgment that the party cannot for sufficient reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just. (Emphasis added.)
Civ.R. 56(F) calls for the party opposing a motion for summary judgment to state in an affidavit why an affidavit is insufficient to present essential facts to oppose the motion for summary judgment. However, appellant did not submit an affidavit for the trial court to consider under Civ.R. 56(F). Hence, the trial court could not act under Civ.R. 56(F). SeeState ex rel. Coulverson v. Ohio Adult Parole Auth. (1991),62 Ohio St.3d 12, 14.
Notwithstanding the above, it appears appellant was not asserting affidavits were unavailable. Instead, appellant's request for a continuance was based on appellees' failure and/or refusal to respond to discovery requests. Appellant, therefore, should have timely moved for an order to compel discovery. Appellant did move for an order to compel discovery, but this was not done until May 26, 1998.
According to the original case schedule, dispositive motions were to be filed by February 3, 1998, and the discovery cut-off date was February 17, 1998. On February 3, 1998, appellant filed a notice that the depositions of the Seedorffs and the Zollingers would be taken on February 16, 1998. These did not occur. On April 14, 1998, the case schedule was modified, and dispositive motions and stipulations were to be filed by May 11, 1998. Also, on April 14, 1998, the trial court granted the Zollingers' motion for a protective order, limiting discovery of the Zollingers to means other than oral depositions.
On May 1, 1998, appellant filed a notice that Mr. Seedorff's deposition would be taken on May 7, 1998. This deposition did not take place. On May 14, 1998, an agreed journal entry was filed modifying the case schedule by placing a May 19, 1998 deadline for dispositive motions. On May 19, 1998, the Seedorffs and the Zollingers filed their motions for summary judgment along with their affidavits.
On May 26, 1998, appellant filed her motion, pursuant to Civ.R. 37, to compel discovery of all the defendants and the motion for a continuance. On July 6, 1998, the trial court filed an entry denying the motion for a continuance on the basis of the May 14, 1998 agreed journal entry which set the May 19, 1998 deadline for dispositive motions. The trial court did not specifically rule on appellant's motion to compel discovery; however, it has impliedly been denied. See State exrel. The V Cos. v. Marshall (1998), 81 Ohio St.3d 467, 469.
A trial court's decision on a motion to compel discovery is within its broad discretion, and the decision will not be reversed absent an abuse of such discretion. Id. The trial court here did not abuse its discretion. The discovery cut-off date was February 17, 1998. Mr. Seedorff apparently did not appear at depositions scheduled for February 16, 1998 and May 7, 1998. However, appellant did not move to compel discovery until after the cut-off date for filing dispositive motions. Given the untimeliness of appellant's actions, the trial court did not abuse its discretion in impliedly denying appellant's motion to compel discovery.
Accordingly, appellant's eighth assignment of error is overruled.
We now turn to appellant's remaining assignments of error. In essence, appellant asserts summary judgment in favor of appellees was inappropriate. Summary judgment is appropriate when, construing the evidence most strongly in favor of the nonmoving party: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party. Zivich v. Mentor Soccer Club, Inc. (1998), 82 Ohio St.3d 367,369-370, citing Horton v. Harwick Chem. Corp. (1995),73 Ohio St.3d 679, paragraph three of the syllabus. Our review of the appropriateness of summary judgment is de novo. See Smiddyv. The Wedding Party, Inc. (1987), 30 Ohio St.3d 35, 36.
In her sixth assignment of error, appellant contends the trial court erred in not considering the depositions of Edson Linnabary, an original builder in and a developer of the Windrush Creek Development, and Donald R. McCue, Ms. McCue's former husband. The trial court stated it would not consider Mr. Linnabary's testimony because it related to matters beyond the scope of the covenants at issue. (See trial court decision, p. 2, fn. 1.) Appellant contends the trial court ignored Mr. McCue's deposition.
As indicated above, our review of the appropriateness of summary judgment is de novo. Such review includes determinations on the appropriateness and relevance of evidence. Hence, the trial court's treatment of the evidence is immaterial to how this court may treat such evidence. We will independently address the evidence as it becomes necessary. For these reasons, appellant's sixth assignment of error is overruled.
In her third assignment of error, appellant contends there existed a genuine issue of material fact as to whether the Zollingers and the Seedorffs violated a provision in the Declaration of Covenants, Restrictions, Easements and Assessment ("Declaration") that granted an easement of enjoyment "over and across" areas designated "Scenic Preserves." Appellant asserts such easement granted her a view of the pond and that the trees on the Seedorffs' and Zollingers' properties obstructed such view.
All the properties at issue are subject to the duly recorded Declaration. The general rule with respect to construing agreements that restrict the use of real estate is that such agreements are strictly construed against limitations on such use, and all doubts should be resolved against a possible construction that would increase the restriction on use of the real estate. Driscoll v. Austintown Associates (1975), 42 Ohio St.2d 263,276-277, quoting Loblaw, Inc. v. Warren Plaza, Inc.
(1955), 163 Ohio St. 581, paragraph two of the syllabus.
The language in the Declaration that purportedly granted a "view easement" of the pond is contained in Article III and states:
 Section 4. Scenic Preserve. The Builders and Developers have designated certain areas of Windrush Creek as Scenic Preserves, the purpose of which is to enhance the visual appearance and amenities of Windrush Creek. To accomplish these purposes the Builders and Developers impose the following easements, restrictions and covenants upon all areas of Windrush Creek designated as Scenic Preserve:
* * *
 c. All Owners shall have an easement of enjoyment over and across areas of Scenic Preserve, and all Owners, members of Owners' families, and their guests may transverse and use such Scenic Preserve, provided that no person shall engage in conduct in disturbance of the peace or destruction of Scenic Preserve areas. Such easement shall be appurtenant to and shall pass with the title of every residential lot. (Emphasis added.)
No party disputes that the pond at issue is designated a Scenic Preserve. Appellant contends the words "over and across" constitute the granting of a "view" of the pond because Section 4 also specifically states all owners "may transverse and use such Scenic Preserve." Appellant asserts that if both "over and across" and "transverse and use" meant only physical access (as opposed to visual access) to the pond, then such language would be redundant.
Redundant or not, the language above did not grant appellant a right to a view of the pond. Appellant's conclusion as to the meaning of such language requires, at best, the use of an implication which would result in restricting the use of the Zollingers' and Seedorffs' properties. As indicated above, however, the Declaration must be strictly construedagainst any limits on the use of their properties. If the relevant parties desired that property owners' view of the pond from their properties be unobstructed, then such would have had to been granted in express language. Such is not the case here.
Even if we accepted appellant's argument that "over and across" means the right to view the pond, Section 4c does not state that such right consists of a view from one's private property. The language is that the easement is over and across "areas of Scenic Preserve." Thus, any right to view extends only to areas within the Scenic Preserve. In other words, appellant does not have an easement to view the pond from her property (or anyone else's property), over and across the Seedorffs' and Zollingers' properties.
Appellant points to the deposition testimony of Mr. Linnabary and Mr. McCue which allegedly supports her argument. However, we have already determined that the Declaration, by its terms, does not grant a so-called "view easement" as alleged by appellant. Therefore, any testimony that could be interpreted as supporting appellant's argument would constitute parol evidence, and parol evidence may not be admitted to vary, alter or modify the terms of an unambiguous written agreement.Rhodes v. Rhodes Indus., Inc. (1991), 71 Ohio App.3d 797, 804. Even if we assume arguendo that the terms of the Declaration were susceptible to different interpretations, the construction that least restricts the free use of the land must be adopted. See Houk v. Ross (1973), 34 Ohio St.2d 77, paragraph two of the syllabus.
We conclude, as a matter of law, that the Declaration did not grant appellant a "view easement" as alleged in her complaint. Accordingly, appellant's third assignment of error is overruled.
In her fourth assignment of error, appellant contends there was a genuine issue of material fact as to whether the Seedorffs and Zollingers violated the architectural control provision contained in the Declaration. Article III, Section 1 of the Declaration states:
 * * * Architectural Control. * * * nor shall any landscaping * * * be done until complete final plans and specifications therefor * * * in the name of the * * * landscaper have been submitted to and approved by the Company, its agents, successors or assigns, as to harmony of exterior design and general quality with the standards of Windrush Creek generally and as to location in relation to surrounding structures and topography. (Emphasis added.)
Appellant asserts this provision was violated, essentially, because none of the trees at issue have been approved. Again, the architectural control provision must be strictly construed against limiting the free use of the properties. Article III, Section 1 states that no landscaping shall be done until complete final plans in the name of the landscaper have been submitted and approved. There is no evidence that the Zollingers or Seedorffs engaged in any landscaping that would be subject to the architectural control provision.
Appellant's main argument is that certain large trees near the borders of the Seedorffs' and Zollingers' properties were never approved. However, the planting of these trees, assumingarguendo that such would constitute "landscaping," was not done by the Seedorffs or the Zollingers. Appellant asserts that the provisions in the Declaration run with the land and are binding upon all subsequent property owners. While this may be true, it does not follow that subsequent owners must get approval for "landscaping" done before they owned property. By way of example, the provision could have stated that no landscaping shall exist that has not been submitted and approved. However, the architectural control provision does not so state, and this court will not, given the case law on interpreting covenants and restrictions, construe the provision as requiring such.
As to any planting that the Zollingers and/or Seedorffs may have done themselves, appellant raised no genuine issue of fact that such constituted landscaping subject to submission and approval. Indeed, appellant's main focus throughout this litigation has been on the large trees that block her view of the pond. Appellant submitted no evidence that any other planting (there is evidence, for example, that the Zollingers planted shrubs) required approval. As a matter of law, we find that the architectural control provisions do not require approval of each and every planting done on one's property. Such a reading of the provision would constitute a construction that highly restricts the free use of property, and such construction is not permitted under the law.
Given all of the above, summary judgment in favor of the Seedorffs and Zollingers on this claim was appropriate. Accordingly, appellant's fourth assignment of error is overruled.
Appellant's first and second assignments will be addressed together. Appellant contends there was a genuine issue of fact as to whether the Seedorffs' and Zollingers' "wall of trees" constituted a private nuisance and violated the Declaration. As to the Declaration, Article III, Section 3, states:
 a. No noxious or offensive activity shall be carried on upon any portion of the Properties, nor shall anything be done tending to cause embarrassment, discomfort, annoyance or nuisance to any Owner, tenant or guest thereof in Windrush Creek.
Appellant asserts that because a question of fact was raised as to the existence of a private nuisance, a similar issue has been raised with regard to a violation of the above provision. Accordingly, we will analyze appellant's claim under the Declaration in the same manner we analyze her private nuisance claim.
Appellant contends that the trees at issue constitute a nuisance because they deprive her of the amenities of Windrush Creek, cause her annoyance, harm, and inconvenience, and pervade her daily life because she is unable to enjoy the pond. The initial issue is how private nuisance is defined. Appellant cites to O'Neil v. Atwell (1991), 73 Ohio App.3d 631, motion to certify overruled in (1991), 62 Ohio St.3d 1453. In O'Neil, the Portage County Court of Appeals, quoting Black's Law Dictionary, defined private nuisance as:
 "generally anything that by its continuous use or existence works annoyance, harm, inconvenience or damage to another landowner in the enjoyment of his property. Activity which results in an unreasonable interference with the use and enjoyment of another's property. A nuisance affecting a single individual or definite small number of persons in enjoyment of private rights not common to the public." Id. at 635.
The above definition is very broad, and appellant relies upon it in support of her claims. However, the Supreme Court of Ohio has defined nuisance, and it is these definitions that we apply to the facts herein. A nuisance can be either absolute or qualified. State ex rel. Schoener v. Hamilton Cty. Bd. ofCommrs. (1992), 84 Ohio App.3d 794, 799, citing Taylor v.Cincinnati (1944), 143 Ohio St. 426, 436.
In Taylor, the Supreme Court held at paragraphs two and three of the syllabus:
 2. Absolute nuisance, for which strict liability or liability without fault is imposed by law, may be defined as a distinct civil wrong arising or resulting from the invasion of a legally protected interest, and consisting of an unreasonable interference with the use and enjoyment of the property of another; the doing of anything or the permitting of anything under one's control or direction to be done without just cause or excuse, the necessary consequence of which interferes with or annoys another in the enjoyment of his legal rights; the unlawfully doing of anything or the permitting or anything under one's control or direction to be done, which results in injury to another, or the collecting and keeping on one's premises anything inherently dangerous or likely to do mischief, if it escapes, which, escaping, injures another in the enjoyment of his legal rights.
 3. As distinguished from absolute nuisance, a qualified nuisance or nuisance dependent upon negligence consists of anything lawfully but so negligently or carelessly done or permitted as to create a potential and unreasonable risk of harm, which, in due course, results injury to another.
The Supreme Court, in essence, reiterated its holdings inTaylor in Metzer v. The Pennsylvania, Ohio Detroit Rd. Co.
(1946), 146 Ohio St. 406, paragraphs one and two of the syllabus:
 1. An absolute nuisance, or nuisance per se,
consists of either a culpable and intentional act resulting in harm, or an act involving culpable and unlawful conduct causing unintentional harm, or a nonculpable act resulting in accidental harm, for which, because of the hazards involved, absolute liability attaches notwithstanding the absence of fault.
 2. A qualified nuisance, or nuisance dependent on negligence, consists of an act lawfully but so negligently or carelessly done as to create a potential and unreasonable risk of harm, which in due course results in injury to another. (Taylor v. City of Cincinnati, 143 Ohio St. 426, approved and followed.)
As to absolute nuisance, there is no evidence that the act of maintaining or the mere existence of the trees involves a hazard such that absolute liability attaches. Rather, appellant is merely inconvenienced and annoyed by the trees because they block her view of the pond. No legally protected interest of appellant has been invaded. It must be emphasized that the law of private nuisance is one of degree and generally turns on whether the use to which property is put is reasonable and whether there is an appreciable, substantial, tangible injury resulting in actual material and physical discomfort. SeeRautsaw v. Clark (1985), 22 Ohio App.3d 20, 21; see, also,Brown v. Scioto Cty. Bd. of Commrs. (1993), 87 Ohio App.3d 704,712-713 (in order to be actionable, the invasion must be intentional and unreasonable or involve unreasonable or dangerous conduct).
The use to which the Seedorffs and Zollingers put their property was not unreasonable and certainly not dangerous. They maintained tress on their property. Appellant's dislike of the trees and her erroneous conclusion that their existence violates the Declaration simply do not amount to absolute nuisance.
As to qualified nuisance, the Supreme Court has further indicated that a civil action based upon the maintenance of a qualified nuisance is essentially an action in tort for the negligent maintenance of a condition which, of itself, creates an unreasonable risk of harm, ultimately resulting in injury.Allen Freight Lines, Inc. v. Consol. Rail Corp. (1992), 64 Ohio St.3d 274,275. The dangerous condition constitutes the nuisance. Id.
As stated above, the trees do not constitute a dangerous condition. In addition, the existence of the trees does not create and has not created an unreasonable risk of harm. Just because appellant dislikes the trees (because they obstruct her view of the pond) does not mean an unreasonable risk of harm has been created or maintained. Other than her subjective opinion, appellant has not shown that maintaining the trees or their mere existence constituted an unreasonable use of the properties.
Given the above, summary judgment in favor of the Seedorffs and Zollingers on appellant's nuisance-related claims was appropriate. Accordingly, appellant's first and second assignments of error are overruled.
In her fifth assignment of error, appellant contends the association acted unreasonably and/or violated its duties under the Declaration by failing to enforce the architectural control provision. Appellant asserts that the evidence shows the association's predecessor had determined the Zollingers' trees violated the Declaration, yet the association has never taken any action to enforce such determination. As to the Seedorffs' trees, appellant asserts the association failed to enforce the prohibition against the unauthorized trees.
Article VI of the Declaration states:
 Section 1. Windrush Creek Property Owner's Association. The Company has caused to be incorporated a not for profit Ohio corporation named "Windrush Creek Property Owner's Association," the purpose of which is to provide an organization through which Owners may act on matters of common interest and to provide a body responsible for the maintenance of common properities. (Emphasis added.)
Article VII states:
 Section 1. Duration. The covenants and restrictions of this Declaration shall run with and bind the land and shall inure to the benefit of and be enforceable by the Association, the Company or the Owner of any land subject to this Declaration, their respective legal representatives, heirs, successors and assigns, for a period of twenty-five (25) years from the date this Declaration is recorded. (Emphasis added.)
Given the discretionary language of the above provisions, neither the association nor its predecessor was required, assuming arguendo there was a violation, to order any owner to cut down the trees at issue. Hence, even if we assume the association's predecessor told the Zollingers' predecessor that the tress were in violation of the Declaration and that they needed to be taken down, there is simply nothing in the above provisions that required the association's predecessor to enforce any such order.
As to the present dispute involving the trees, we have determined that summary judgment in favor of the Seedorffs' and Zollingers' was appropriate. In other words, the trees do not violate the Declaration and, therefore, the association obviously has nothing to enforce.
Given the above, summary judgment in favor of the association on this claim was appropriate. Accordingly, appellant's fifth assignment of error is overruled.
In her seventh assignment of error, appellant contends summary judgment in favor of the Seedorffs' on her trespass claim was inappropriate. Appellant asserts that the Seedorffs' expressly admitted they were trespassing in that portions of their trees extended into appellant's lot. The Seedorffs assert that they have always acknowledged appellant's right to trim or remove intruding limbs or branches and that such remedy does not require a court injunction.
Trespass is an unlawful entry upon the premises of another.Chance v. BP Chemicals, Inc. (1996), 77 Ohio St.3d 17, 24. In general, ownership of land extends to the space above and below the land; however, this right is not fixed, and the owner owns only as much of the space above him or her that is used.Id. at 25-26.
The uncontroverted facts here establish that the Seedorffs' trees encroach upon or into appellant's property. Hence, summary judgment in favor of the Seedorffs was inappropriate. There exists a genuine issue of material fact as to issues such as the extent of the trespass, the use to which appellant puts the land that is being trespassed upon, and any damages appellant may suffer. Accordingly, summary judgment in favor of either party is inappropriate. Accordingly, appellant's seventh assignment of error is sustained, in part, in that judgment in favor of the Seedorffs was inappropriate and is overruled, in part, to the extent appellant asserted she should have been granted summary judgment on the trespass claim.
In summary, appellant's first, second, third, fourth, fifth, sixth and eighth assignments of error are overruled. Appellant's seventh assignment of error is sustained in part and overruled in part. The judgment of the Franklin County Court of Common Pleas is affirmed as to all claims other than the trespass claim against the Seedorffs. The judgment of the Franklin County Court of Common Pleas is reversed only as to the trespass claim against the Seedorffs, and such cause is remanded for further proceedings.
Judgment affirmed in part and reversed in part; and causeremanded.
PETREE and BROWN, JJ., concur.
[1] Ms. McCue has not appealed.