[Cite as *Schultz v. Ohio Dept. of Transp.*, 2010-Ohio-201.]

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

GREGORY A. SCHULTZ, JR., et al.

　　Plaintiffs

　　v.

OHIO DEPARTMENT OF TRANSPORTATION

　　Defendant
　　Case No. 2007-07272

Judge Joseph T. Clark

DECISION

{¶ 1}　Plaintiffs brought this action alleging negligence and trespass. The issues of liability and damages were bifurcated and the case proceeded to trial on the issue of liability.

{¶ 2}　Plaintiffs own a 5.3-acre residential parcel located at 640 Ross Road, Lancaster, Ohio. To the west, plaintiffs' property borders an old farmstead located at 530 Ross Road, which is owned by Jim and Jodi Morris. (Jim Morris is a cousin of plaintiff, Gregory Schultz, Jr.) West of the Morris property, at 526 Ross Road, is a residential parcel owned by Schultz, Jr.'s father, Gregory Schultz, Sr. These three properties essentially form a row along the floor of an east-to-west valley. To the south, the properties border Ross Road and a stream that runs parallel to the northern edge of the road. To the north, a steep ridge rises 150-200 feet in elevation, and approximately halfway up that ridge, forming the northern boundary of plaintiffs' property, is a 4-lane divided highway known as the U.S. Route 33 "Lancaster bypass."

{¶ 3}　Plaintiffs allege that defendant's construction of a new highway altered the

flow of surface water such that their adjacent real property became subject to regular saturation and flooding.

{¶ 4}  Schultz, Jr. testified that he first became familiar with the area when he began renting the farmstead in 1998, which was prior to the construction of his home, the home of Schultz, Sr., and the highway.  (Although Schultz, Jr. owned the farmstead from 2001 to 2005, plaintiffs do not premise their claims upon his former ownership of that property.)  Schultz, Jr. stated that he purchased the site of his present home in January 2003, and, relying on his experience in residential construction, more or less built the home himself.  According to Schultz, Jr., when he decided to build the home, he was well aware of defendant's plans to build a highway to the north; indeed, in 2002 he sold defendant a 3.2-acre parcel from the farmstead for use as highway right-of-way.  Construction of his home and the highway occurred concomitantly, with the home being completed in November 2003 and the highway being completed in approximately September 2004.

{¶ 5}  Schultz, Jr. testified that as the highway neared completion in the summer of 2004, he observed that after periods of heavy rain, surface water flowed onto his property and accumulated there in greater quantities than it had in the past; he attributed this phenomenon to the concentrated release of surface water by the highway drainage system.  The highway in this vicinity was built with a drainage system in which surface water is collected by a series of drains, diverted into a network of buried pipes, and released from "discharge pipes" that extend outward from the embankment on the south side of the highway, where the outflow then runs downhill away from the highway.  Surface water on the section of highway immediately north of plaintiffs' property feeds into two discharge pipes, one located north of Schultz, Sr.'s property (the "western discharge pipe") and one located north of undeveloped land east of plaintiffs' property (the "eastern discharge pipe").

{¶ 6}  There is no question that from the time the drainage system became operational, Schultz, Sr.'s property was inundated during periods of heavy rain with outflow from the western discharge pipe.  According to Schultz, Jr., that outflow tended to then flow east toward his home and settle throughout his property.  Schultz, Jr. further testified that the outflow eroded portions of a shared gravel driveway that leads

to both the Morris' and Schultz, Sr.'s homes and that some of the washed-out gravel settled in the southwest corner of his property.

{¶ 7} David Johnson and Jason Sturgeon, engineers employed by defendant, testified that they and other employees of defendant visited the area numerous times in response to complaints from Schultz, Sr. Johnson and Sturgeon explained that the issues associated with Schultz, Sr.'s property owed in large part to the fact that defendant designed the highway just prior to the construction of his home, which was built in what proved to be the direct path of the outflow from the western discharge pipe. Johnson stated that he observed the western discharge pipe during rainstorms and found its outflow to be significant, but he stated that the outflow ran south toward the stream rather than east toward plaintiffs' home. Johnson acknowledged that the path of the outflow toward the stream briefly crossed the extreme southwest corner of plaintiffs' property before emptying into the stream, but he stated that the amount of water reaching plaintiffs' property was insubstantial.

{¶ 8} Johnson and Sturgeon testified that in order to mitigate the outflow from the western discharge pipe, defendant designed a catch basin to be situated between the discharge pipe and Schultz, Sr.'s home so as to capture the outflow and channel it through a storm sewer that would empty directly into the stream. After securing an easement on which to locate the catch basin and storm sewer, defendant hired a contractor who installed the same in approximately March 2005. The catch basin proved ineffective, though, as it did not capture the amount of outflow as intended, and the shared driveway continued to sustain erosion. Additionally, Schultz, Jr. stated that surface water continued to accumulate on his property in spite of the catch basin.

{¶ 9} Given the ineffectiveness of the catch basin, defendant designed another remedy which envisioned the channeling of outflow from the western discharge pipe directly into a buried pipe. The buried pipe would then connect inside the catch basin with the existing storm sewer that ran to the stream such that outflow from the discharge pipe would remain piped underground until it reached the stream. Johnson testified that a contractor performed this work in the fall of 2006 and at the same time also removed gravel that had washed out of the shared driveway and settled along the border between the Morris property and Schultz's Jr.'s property.

{¶ 10} Schultz, Jr. testified that his property has continued to experience saturation and flooding even after the 2006 project, and further testified that when defendant or its contractor removed the washed-out gravel from his property, it also removed soil from the area and left a depression where surface water now collects. Schultz, Jr. stated that he subsequently spoke with employees of defendant about replacing the soil, but that defendant ultimately declined to do so.

{¶ 11} Concerning the soil, Johnson testified that, as part of defendant's ongoing efforts to address the western discharge pipe, it dispatched contractors or its own employees multiple times between 2004 and 2006 to spread new gravel on the shared driveway and to remove any gravel that washed out of the driveway. Johnson estimated that, in toto, one or two dump truck loads of material were removed from the area in question; he also stated that a contractor graded the area around the time of the 2006 project.

{¶ 12} With regard to the continued accumulation of surface water on his property even after the 2006 project, Schultz, Jr. testified that the most problematic areas are in the northeast and extreme southwest corners of his property; however, he added that the flooding in the southwest corner may be attributable to backups in the stream, which is maintained by the township. Schultz, Jr. stated that the persistence of the flooding in the northeast corner even after the 2006 project surprised him and caused him to investigate other potential sources of the water. Schultz, Jr. stated that he discovered during a rainstorm that much of the water emanated from the eastern discharge pipe, which he had not previously known to exist. According to Schultz, Jr., outflow from the eastern discharge pipe sprays "like a hose" during rainstorms, runs southwest across his eastern neighbor's property and onto his, where it pools northeast of his home.

{¶ 13} Johnson and Sturgeon both testified that although they were very familiar with the concerns associated with the western discharge pipe, they never heard complaints about the eastern discharge pipe until the time of trial. Regardless, Johnson and Sturgeon both testified that according to a topographic map of the area, it is not possible for outflow from the eastern discharge pipe to flow southwest onto plaintiffs' property. (Defendant's Exhibit A.) Both men stated that because the land south and

southeast of the discharge pipe is situated in a more pronounced downhill slope than the land to its southwest, the outflow should flow south or southeast down the steeper slope and into the stream without entering Shultz, Jr.'s property.

{¶ 14} Thus, according to Johnson and Sturgeon, neither of the discharge pipes releases outflow onto plaintiffs' property; they instead attribute any accumulation of water on the property to its low-lying nature. To this end, Johnson testified that during the planning phase of the highway project, prior to the construction of plaintiffs' home, he inspected the highway corridor on foot in order to identify wetlands and other environmental features that might be affected by the project. Johnson stated that he specifically recalled inspecting plaintiffs' property and observing a small wetland, including tall grass and cattails, just east of where plaintiffs' home now stands.

{¶ 15} Johnson and Sturgeon both stated that given the location of plaintiffs' property on the floor of the valley, they would expect surface water to naturally flow south down the steep ridge and onto the property; moreover, they stated that because surface water flowing down the ridge is now diverted by the highway drainage system to points east and west of plaintiffs' property, the highway probably reduces the flow of surface water onto the property. Nonetheless, Sturgeon stated that there is a significant enough drop in elevation (approximately 50 feet) from the highway to where the land levels out around plaintiffs' home that he would expect some surface water to still accumulate near the home.

{¶ 16} Schultz, Jr. acknowledged that his property is situated near the lowest point in the valley and has a high water table, and he stated that in light of these conditions, he was not able to build a basement for his home, that he placed fill dirt on the property while constructing the home, and that he installed drainage pipe throughout the property. However, Schultz, Jr. testified that from the time he began living in the area in 1998 until the construction of the highway in 2004, surface water never accumulated on the property to the degree that it now does.

{¶ 17} Defendant argues that outflow from the eastern discharge pipe never reached plaintiffs' property and that any outflow from the western discharge pipe that reached the property prior to the 2006 project did not unreasonably interfere with the

natural flow of surface water. Defendant further argues that plaintiffs' claims are barred, in part, by the applicable statute of limitations.

{¶ 18} Pursuant to R.C. 2743.16(A), "civil actions against the state permitted by sections 2743.01 to 2743.20 of the Revised Code shall be commenced no later than two years after the date of the accrual of the cause of action * * *." Determining the date of accrual for a claim of trespass depends upon whether the alleged trespass is continuing or permanent.

{¶ 19} Trespass is defined as "an interference or invasion of a possessory interest in property." *Abraham v. BP Exploration & Oil, Inc.*, 149 Ohio App.3d 471, 2002-Ohio-4392, ¶14. "[I]n order to set forth a prima facie case of trespass to real property, a plaintiff must demonstrate an unauthorized and intentional act, and entry onto the land in possession or control of another." Id.

{¶ 20} A continuing trespass occurs where there is some ongoing tortious activity attributable to the defendant, perpetually creating fresh violations of the plaintiff's property rights from which a cause of action continues to arise "until the claim has ripened into a presumptive right by adverse possession." *Reith v. McGill Smith Punshon, Inc.*, 163 Ohio App.3d 709, 2005-Ohio-4852, ¶49-50. In contrast, a permanent trespass occurs when the tortious activity has been fully accomplished, at which time the statute of limitations commences to run. Id. The "key to distinguishing a continuing trespass from a permanent trespass" is the "defendant's ongoing conduct or retention of control." *Sexton v. City of Mason*, 117 Ohio St.3d 275, 2008-Ohio-858, ¶45.

{¶ 21} Defendant continued to retain control over the highway at all times after its completion in 2004, as evidenced by the modifications that defendant made to its drainage features in 2005 and 2006. Therefore, the court finds that plaintiffs allege a continuous trespass, and inasmuch as plaintiffs filed their complaint on August 27, 2007, the court shall not consider any portion of their claims that can be attributed to acts or omissions on the part of defendant that occurred prior to August 27, 2005. See *Valley Ry. Co. v. Franz* (1885), 43 Ohio St. 623*; State v. Swartz*, 88 Ohio St.3d 131, 2000-Ohio-277; *Bays v. Kent State Univ.* (1997), 86 Ohio Misc.2d 69.

{¶ 22} The water emanating from the discharge pipes is properly defined as "surface water," meaning "'that which is diffused over the surface of the ground, derived

from falling rains and melting snows, and continues to be such until it reaches some well defined channel in which it is accustomed to, and does flow with other waters, whether derived from the surface or springs; and it then becomes the running water of a stream, and ceases to be surface water.'" *Reith*, supra, at ¶25, quoting *Crawford v. Rambo* (1886), 44 Ohio St. 279, 282. Such water remains surface water even when collected and channeled through pipes, until it reaches an endpoint where it mixes with "other waters." Id. at 716.

{¶ 23} The Supreme Court of Ohio has adopted a reasonable use rule for surface water disputes: "In resolving surface water disputes, courts of this state will apply a reasonable-use rule under which a possessor of land is not unqualifiedly privileged to deal with surface water as he pleases, nor absolutely prohibited from interfering with the natural flow of surface waters to the detriment of others. Each possessor is legally privileged to make a reasonable use of his land, even though the flow of surface waters is altered thereby and causes some harm to others, and the possessor incurs liability only when his harmful interference with the flow of surface water is unreasonable." *McGlashen v. Spade Rockledge Terrace Condo Dev. Corp.* (1980), 62 Ohio St.2d 55, syllabus.

{¶ 24} "Under the reasonable-use rule, unless the defendant's conduct is unlawful or subject to strict liability, the defendant's liability for interference with surface water flow is controlled by principles of common law negligence, regardless of whether the plaintiff's cause of action sounds in nuisance or trespass." *Franklin Cty. Dist. Bd. of Health v. Paxson*, 152 Ohio App.3d 193, 203, 2003-Ohio-1331. In order to prevail under a theory of negligence, plaintiffs must prove by a preponderance of the evidence that defendant owed them a duty, that defendant's acts or omissions resulted in a breach of that duty, and that the breach proximately caused their injuries. *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 81, 2003-Ohio-2573, citing *Menifee v. Ohio Welding Products, Inc.* (1984), 15 Ohio St.3d 75, 77. A breach of duty can be found only if defendant's interference with surface water flow is unreasonable, which is determined "by balancing the gravity of the harm caused by the interference against the utility of the [defendant's] conduct." *McGlashan*, supra, at 60, adopting 4 Restatement of the Law 2d, Torts (1979), 108-142, Sections 822-831.

{¶ 25} Upon review, the court finds that plaintiffs failed to establish by a preponderance of the evidence that construction of the highway unreasonably interfered with the flow of surface water onto their property. Concerning the eastern discharge pipe, Johnson's and Sturgeon's testimony in relation to the topographical map established that the contour of the land in that area does not direct the outflow of the pipe onto plaintiffs' property. As for the western discharge pipe, the totality of the evidence shows that its outflow prior to being channeled underground essentially flowed through Schultz, Sr.'s property in a southeasterly path which, as it neared the stream, caused any remaining outflow to cross the extreme southwest corner of plaintiffs' property. Johnson testified, though, that he observed this portion of plaintiffs' property during a rainstorm in 2005 and found that the flow of surface water in that area was slight. He added that he observed surface water naturally flowing in a similar path prior to construction of the highway. Indeed, plaintiffs failed to show that surface water would not naturally flow in such a path in the absence of the highway. In short, the greater weight of the evidence demonstrates that surface water accumulates naturally on plaintiffs' property and that at no time did the highway drainage system unreasonably contribute to such accumulation on or after August 27, 2005.

{¶ 26} However, concerning plaintiffs' allegation that defendant removed soil and created a poorly-draining depression on the southwest corner of their property in the course of removing gravel that had washed into that area from the shared driveway, the court finds that plaintiffs proved a claim of trespass by a preponderance of the evidence. Plaintiffs offered a photograph taken by Schultz, Jr. in 2008 which depicts a shallow, slightly irregular depression in the area from which the gravel was removed. (Plaintiffs' Exhibit 14.) The size of the depression in this photograph corresponds with Johnson's testimony that one to two dump truck loads of material were removed from this general area, inclusive of the washed-out gravel, between 2004 and 2006. According to Schultz, Jr.'s testimony and an aerial photograph depicting the boundaries of plaintiffs' property, the depression is situated at least in part on plaintiffs' property near its border with the Morris property. (Plaintiff's Exhibit 19.)

{¶ 27} No evidence was presented as to whether plaintiffs authorized defendant's incursion upon their property. However, the court finds that defendant's coming upon

the property without such authorization would constitute a trespass and that even if plaintiffs were to have authorized defendant to enter upon their property for the limited purpose of removing gravel, defendant exceeded the scope of its privilege and thus committed a trespass when it also removed plaintiffs' soil. See Restatement of the Law 2d, Torts (1965), 311, Section 168. Under either theory, plaintiffs are entitled to recover to the extent that defendant removed soil on or after August 27, 2005.

{¶ 28} For the foregoing reasons, the court finds that plaintiffs have failed to prove their negligence and trespass claims concerning the alleged interference with surface water flow onto their property, but that they have proved their trespass claim with regard to the removal of soil from their property on or after August 27, 2005. The case will be set for trial on the issue of damages.

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

GREGORY A. SCHULTZ, JR., et al.

Plaintiffs

v.

OHIO DEPARTMENT OF TRANSPORTATION

Defendant
Case No. 2007-07272

Judge Joseph T. Clark

JUDGMENT ENTRY

This case was tried to the court on the issue of liability. The court has considered the evidence and, for the reasons set forth in the decision filed concurrently herewith, judgment is rendered in favor of plaintiffs on their trespass claim regarding the removal of soil from their property on or after August 27, 2005. Judgment is rendered in favor of defendant on plaintiffs' remaining trespass and negligence claims. The case will be set for trial on the issue of damages.

_____
JOSEPH T. CLARK
Judge

cc:

D. Joe Griffith
144 East Main Street
P.O. Box 667
Lancaster, Ohio 43130

Velda K. Hofacker
Assistant Attorney General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

RCV/cmd
Filed January 11, 2010
To S.C. reporter January 25, 2010